STATE of Iowa, Appellee,

v.

Barbara Ann TURECEK, Appellant.

No. 88–1556.

Supreme Court of Iowa.

May 23, 1990.

As Corrected June 25, 1990.

Raymond E. Rogers, Appellate Defender, and Barbara M. Anderson and Shari Barron, Asst. Appellate Defenders, for appellant.

Thomas J. Miller, Atty. Gen., Amy M. Anderson, Asst. Atty. Gen., and Mike Zenor, County Atty., for appellee.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, CARTER, and NEUMAN, JJ.

CARTER, Justice.

Defendant, Barbara Ann Turecek, appeals her conviction by jury trial of the offense of second-degree sexual abuse in violation of Iowa Code section 709.3 (1987). The basis for the criminal charge against defendant was an allegation by a thirteen-year-old female child, J.B., that defendant had aided and abetted Rodney Turecek (her then lover and now husband) in performing sex acts on her person by force and against her will.

In appealing the district court's judgment, defendant contends that the trial court erred in (1) failing to instruct the jury concerning a lesser-included offense; (2) admitting irrelevant and inflammatory evidence in the form of a sex manual, containing explicit photographs and written directions, and sexually explicit catalogs, calendars, and magazines found by sheriff's officers in the home which defendant shared with Rodney Turecek; (3) admitting hearsay testimony by a sheriff's deputy concerning statements made by defendant's five-year-old child; and (4) refusing to permit defendant to testify concerning a statement by the victim which was allegedly offered as an explanation for defendant's response to a question from the victim on a later occasion. Upon our review of the record and the arguments of the parties, we reverse the judgment of conviction and remand the case for retrial.

The evidence viewed most favorably to the State reveals that, in the late afternoon of July 24, 1987, J.B., a thirteen-year-old female child, was baby-sitting with defendant's two children at a home in Peterson, Iowa, which defendant shared with Rodney Turecek. Defendant and Rodney returned home around 4:15 p.m. Approximately one hour later, they called J.B. into a bedroom where the two of them disrobed her, handcuffed her and tied her on a bed where Rodney had sexual intercourse with J.B. Later that day, J.B. telephoned a friend in East Liverpool, Ohio, and relayed to her a sketchy version of what had occurred.

J.B. did not tell anyone else about the incident for several weeks. Sometime in early September, J.B. told her mother what had happened. Her mother reported the crime to the county attorney and the sheriff, and their subsequent investigation led to the filing of criminal charges. At the trial, J.B. testified to the events which we have described. The defendant and Rodney Turecek (who was then her husband and was also charged with the crime) also testified, and both claimed that there had been no sexual assault on J.B. They testified that in the late afternoon of July 24, 1987, J.B. entered their bedroom after drinking some vodka which she had found in the home. They indicated that J.B. laughed and exhibited odd behavior. They testified that although they urged J.B. to remain at their home until she had sobered up, she left the house at approximately 5:45 p.m. Other significant facts which bear upon our decision of this appeal are

stated and considered in our discussion of the legal issues which are presented.

## I. *The Lesser–Included Offense Issue.*

■ At the time the formal record was made in the trial court concerning objections and exceptions to the court's jury instructions, defendant, through counsel, requested that instructions and verdict forms be submitted concerning the offenses of third-degree sexual abuse and simple assault. Defendant claimed that these crimes were lesser-included offenses under the principal charge of second-degree sexual abuse. The trial court refused to so instruct the jury and did not include these offenses in the verdict forms.

In presenting her issues on appeal, defendant concentrates her lesser-included-offense argument on the crime of simple assault. She does not renew her claims concerning third-degree sexual abuse. In answering defendant's argument, the State does not deny that assault is in fact a lesser-included offense with respect to the principal charge of second-degree sexual abuse under the applicable statutes and as that crime was submitted to the jury in the trial court's marshaling instruction. It seeks to avoid reversal, however, by arguing that the factual test which was generally abandoned in *State v. Jeffries,* 430 N.W.2d 728, 740 (Iowa 1988), should continue to be applied in cases, such as this, which were tried before the *Jeffries* decision was handed down.

We reject the State's retroactivity argument for the same reasons which caused us to reject a similar argument in *State v. Royer,* 436 N.W.2d 637, 640–41 (Iowa 1989). This court has consistently recognized that, where a litigant has preserved for appellate review an issue which, if prevailed upon, will cause a change in existing law, that litigant has the same right to prevail on the issue as the litigant who first obtains appellate review. *See State v. McNabb,* 241 N.W.2d 32, 33–34 (Iowa 1976) (defendant entitled to benefit of change in law if error has been preserved which incorporates that request); *State v. Monroe,* 236 N.W.2d 24, 39 (Iowa 1975) (same).

The State also urges that the refusal to submit assault as a lesser-included offense was harmless error. In attempting to apply a harmless error analysis to the principles which we espoused in *Jeffries,* we are met with the reality that, in all cases where persons convicted of crimes seek reversal for a failure to submit a lesser-included offense, the trier of fact has already found that the elements of the greater offense have been established by evidence beyond a reasonable doubt. As a result, it is always possible for the State to argue that, if the conviction of the greater offense is otherwise error free, the failure to submit a lesser-included offense is harmless error.

Logically this argument has much to recommend it. A severable error-free adverse verdict on a factual issue which would be required to vindicate an additional legal theory has been recognized in other situations as a predicate for harmless error. This has not been the case, however, with respect to issues involving lesser-included offenses in criminal cases. The distinction undoubtedly rests on the belief, seldom articulated, that if the jury had been given an alternative it might have reached a different result. While this approach involves a certain degree of supposition, it is a view that has been consistently applied.

We do not rule out the possibility that we may in the future be faced with a case where we are convinced that there is only one view of the evidence which compels a finding of guilt as to the greater offense. We do not conclude, however, that this is such a case. As the events of the crime were chronologically detailed in the testimony of the victim, J.B., there clearly was an assault committed prior to the alleged sexual abuse. If we continue to adhere to the rule that juries are free to accept part of a witness's testimony and reject other portions thereof, then there was an alternative scenario in the proof which would support a finding of guilt of the crime of assault. If, in addition, we continue to adhere to the principle that the law of lesser-included offense requires that the jury be given an alternative, we must reject the State's claim of harmless error.

Because this case must be retried, we caution the district court that it appears that there are other lesser-included offenses greater in degree than simple assault which may be applicable. A defendant who requests an instruction as to the lowest degree of multiple lesser-included offenses should also be compelled to accept the submission of all higher degrees of lesser-included offenses.

■ The paramount consideration in determining submissibility of lesser-included offenses remains whether the greater offense cannot be committed without also committing all elements of the lesser offense. *State v. McNitt,* 451 N.W.2d 824 (Iowa 1990). The comparison of the elements of the greater and lesser crimes, sometimes referred to as the "elements test," is only resorted to as an aid in applying the impossibility test and is fully subsumed therein.

■ When a case is tried to a jury, the determination of whether a particular lesser crime must be submitted as a lesser-included offense of the crime charged may logically begin with the court's marshaling instruction on the greater offense. The trial court must determine whether if the elements of the greater offense are established, in the manner in which the State has sought to prove those elements, then the elements of any lesser offense have also necessarily been established. It is not essential that the elements of the lesser offense be described in the statutes in the same manner as the elements of the greater offense. *See State v. Waller,* 450 N.W.2d 864, 866 (Iowa 1990) (equating elements statutorily described differently in greater and lesser offenses).

■ Applying these principles to the present case, we believe that third-degree sexual abuse under section 709.4; assault with intent to commit sexual abuse (aggravated misdemeanor) under section 709.11;[1] and simple assault were all properly submissible lesser offenses.

## II. *Evidentiary Issues.*

As a result of the reversal and attendant retrial, we also consider certain evidentiary issues which may arise again.

A. *Admissibility of sex manual, containing explicit photographs and written directions, and sexually explicit catalogs, calendars, and magazines.* Defendant moved to suppress and objected at trial to the admissibility into evidence of several sexually explicit materials which sheriff's officers obtained in executing a search warrant at the home where the crime allegedly occurred. These materials included a manual entitled *The Joy of Sex* which was described on the cover as "a Cordon Bleu Guide to Lovemaking." It contained sexually explicit photographs of nude couples in various positions of intercourse as well as written suggestions for enhancing the pleasure of sexual activities between members of the opposite sex as practiced between couples and among members of larger groups.

The other sexually explicit materials to which objection was made consisted primarily of calendars bearing photographs of nude human bodies, catalogs advertising items such as "Leather–Look nylon ciré Bra'n G-string set with strategically placed zippers for x-tra fun," and copies of *Couples* and *Oui* magazines and Spanish language magazines all containing sexually explicit photographs of nude male and female bodies together with articles and letters from readers describing so-called "kinky" sexual activities. This category of evidence included Exhibits 14, 15, 16, 17, 18, 19, 20, 21, 22, 28, 34, 35, and 36.

Although the trial court concluded that these materials were not relevant to the State's case in chief, it admitted the exhibits for purposes of impeachment. The defendant contends that this was an impermissible method of impeachment having no bearing on the issues in the case and going only to collateral matters injected by the State to bootstrap the admissibility of the exhibits. The State responds that the exhibits were proper impeachment evidence

---

1. *See McNitt,* 451 N.W.2d at 825 (sexual abuse in the *third* degree cannot be committed without also committing the crime of assault with intent to commit sexual abuse).

with respect to testimony given by both defendant and her son who was age six at the time of the trial. In reviewing these conflicting contentions, we are convinced that these exhibits should not have been received for any purpose.

■ As we stated in *State v. Roth,* 403 N.W.2d 762 (Iowa 1987):

> Ordinarily a party may contradict and discredit an adverse witness by presenting evidence showing the facts were other than as indicated by the testimony of the witness. . . .
>
> The offer of impeachment evidence, however, is not without limits. To be admissible, impeachment evidence must have been admissible for some proper purpose independent of the contradiction. Otherwise the impeachment evidence goes only to a collateral issue and is inadmissible. Evidence of two types is admissible independent of contradiction. First, the evidence may be admitted if relevant to some legitimate issue in the case. Second, the evidence is admissible if it is relevant to establishing or undermining the general credibility of the witness being impeached.

*Id.* at 767 (citations omitted). Evidence admissible for purposes of establishing or undermining the general credibility of a witness is limited to matters which bear on bias, peculiar skills, or relevant knowledge or which go to a specific testimonial quality. *State v. Gilmore,* 259 N.W.2d 846, 853 (Iowa 1977).

■ The State seeks to justify the use of these materials for impeaching defendant on the basis that she testified on direct examination that, "I will sit here and look you guys [the jury] in the eye and tell you the truth. I'm telling the truth." The State contends that this testimony constituted evidence of a pertinent trait of defendant's character and thereby opened the door to efforts by the State to detract from that character. This argument is posited on the State's interpretation of Iowa Rule of Evidence 404(a)(1). We do not believe that the testimony to which we have referred constitutes evidence of a person's character or trait of character. An affir-

mation by a witness that they are telling the truth adds nothing to that which has already been established for all witnesses when they take the oath.

■ We also agree with defendant's contentions that the items of testimony which the State asserts to be contradicted by these sexually explicit exhibits are collateral to the issues in the case. The evidence was not admissible for some proper purpose independent of the contradiction. The State had urged that this evidence was properly received to rebut claims by Barbara (most of which were in response to cross-examination on collateral matters) that she never permitted children to watch the "Playboy" channel on her cable television set, that she tried to keep sexually explicit materials away from her children, and that her son had not used *The Joy of Sex* as a coloring book.

None of these exhibits have any bearing on the issue of whether the children ever watched the Playboy channel. More importantly, whether the children ever watched the Playboy channel has no bearing on the issues in case; nor do the issues of whether defendant did or did not keep sexually explicit materials away from the children or did or did not permit her son to use *The Joy of Sex* as a coloring book.

■ The State also contends that these materials were admissible for purposes of impeaching defendant's son, who was age six at the time of trial. This child testified on direct examination that he had no knowledge of what sex is and had never looked at or colored in any books where people were depicted without clothes. All of the aspects of the child's testimony, which the State desired to discredit, pertained to matters collateral to the issues.

■ More significantly, the record clearly reveals that the State knew, and made affirmation on the record prior to the child's testimony, that the child was going to testify exactly as he did with respect to (1) denying conversations he allegedly had with peace officers in which he used sexually explicit language to describe the occurrences on July 24, 1987; (2) the child's

professed lack of understanding of sexual terms; and (3) the child's denial of using *The Joy of Sex* as a coloring book and having access to other sexually explicit materials. The right given to the State to impeach its own witnesses under Iowa Rule of Evidence 607 and our decision in *State v. Trost*, 244 N.W.2d 556, 559–60 (Iowa 1976), is to be used as a shield and not as a sword. The State is not entitled under rule 607 to place a witness on the stand who is expected to give unfavorable testimony and then, in the guise of impeachment, offer evidence which is otherwise inadmissible. To permit such bootstrapping frustrates the intended application of the exclusionary rules which rendered such evidence inadmissible on the State's case in chief.

In considering a similar situation, a federal court in *United States v. Miller*, 664 F.2d 94 (5th Cir.1981), *cert. denied*, 459 U.S. 854, 103 S.Ct. 121, 74 L.Ed.2d 106 (1982), stated:

> Clearly, the Government can impeach its own witness and evidence of a prior inconsistent statement of the witness may be admitted for that purpose even though the statement tends directly to inculpate the defendant. Of course, the prosecutor may not use such a statement under the guise of impeachment for the *primary* purpose of placing before the jury substantive evidence which is not otherwise admissible.

*Id.* at 97 (citations omitted). This approach is consistent with the view we expressed in *State v. Sowder*, 394 N.W.2d 368, 371 (Iowa 1986) (attempt to impeach by use of prior inconsistent statement of witness must be scrutinized as to the true purpose of the offer). *See also United States v. DeLillo*, 620 F.2d 939, 946 (2d Cir.1980), *cert. denied*, 449 U.S. 835, 101 S.Ct. 107, 108, 66 L.Ed.2d 41 (1981); *United States v. Morlang*, 531 F.2d 183, 190 (4th Cir.1975).

■ Finally, the State contends that the admission of these exhibits was proper for purposes of bolstering the testimony of the victim, J.B., who had testified as to seeing some of the exhibits in defendant's home. It is not permissible for a litigant to offer otherwise inadmissible evidence for the sole purpose of corroborating the testimony of one of its own witnesses on a purely collateral matter. Nor does defendant's failure to object to the collateral testimony of J.B. alter this result. The doctrine of curative admissibility recognized in *State v. Pepples*, 250 N.W.2d 390, 393–94 (Iowa 1977), only applies where the *adversary* has introduced the "door opening" evidence.

For the reasons stated, we hold that Exhibits 14, 15, 16, 17, 18, 19, 20, 21, 22, 28, 34, 35, and 36 were inadmissible for any purpose. Because we have determined the exhibits were not admissible, we need not consider defendant's claim that their seizure violated the fourth amendment.

■ B. *Refusal to permit defendant to testify concerning prior statement made by victim in order to explain defendant's response to question from victim on later occasion.* After the victim's mother reported the crime to authorities, a plan was developed to incriminate defendant and Rodney by sending J.B. to their home wearing a body microphone. This plan was carried out, and a conversation between J.B., the defendant, and Rodney was recorded by peace officers located nearby. The tape recording and an enhanced version thereof were admitted into evidence. The statements contained thereon included J.B. saying "I didn't like that. That's rape. I'm only 13. I mean, that's pretty bad." The defendant's response to this statement was "we apologize. We're sorry. I know we did wrong."

After this evidence was admitted at the trial, in the State's case in chief, the defendant sought to testify concerning a prior conversation with the victim claiming it was necessary to provide a clear understanding of her response to the victim's statement on the recording. Defendant asserts that this evidence is permitted by Iowa Rule of Evidence 106(a) which provides:

> When an act, declaration, conversation, writing, or recorded statement, or part thereof, is introduced by a party, any other part or any other act, declaration, conversation, writing, or recorded state-

ment is admissible when necessary in the interest of fairness, a clear understanding, or an adequate explanation.

Seizing on this rule, defendant sought to testify that on an earlier occasion J.B. had told her that she viewed excess drinking as the equivalent of rape because, when J.B.'s father had drunk to excess, he had sexually abused her.

The defendant claims she offered the alleged conversation with J.B. to show that, when J.B. made an assertion concerning rape on the recorded statement, defendant believed she was referring to the overimbibing of vodka that had occurred on July 24. The State sought to exclude that portion of the alleged conversation which related to prior sexual abuse of the victim on the ground that this constituted evidence of the victim's past sexual behavior which is rendered inadmissible under Iowa Rule of Evidence 412.

In ruling on the State's objection, the trial court granted defendant considerable latitude in testifying that J.B. had told her that drinking an alcoholic beverage was like rape to her because of "incidents that had occurred in J.B.'s family." The trial court refused, however, to permit defendant to testify to that portion of the alleged conversation which identified these "incidents" as the prior sexual abuse of J.B. by her father. We find no error in the trial court's rulings on this issue. The court struck a reasonable balance between the provisions of rule 106(a) and rule 412.

We have considered all issues presented and conclude that the judgment of the district court must be reversed. The case is remanded to that court for a retrial consistent with the legal conclusions established in this opinion.

REVERSED AND REMANDED.