# IN THE COURT OF APPEALS OF IOWA

No. 14-1242
Filed June 15, 2016

**STATE OF IOWA,**
       Plaintiff-Appellee,

**vs.**

**YARVON NATHANIEL RUSSELL,**
       Defendant-Appellant.
_____


Appeal from the Iowa District Court for Polk County, Douglas F. Staskal, Judge.


Yarvon Russell appeals his judgment and sentence for second-degree murder. **REVERSED AND REMANDED.**


Mark C. Smith, State Appellate Defender, and Nan Jennisch, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Darrel Mullins, Assistant Attorney General, for appellee.


Heard by Danilson, C.J., and Vaitheswaran and Tabor, JJ.

**VAITHESWARAN, Judge.**

Yarvon Russell appeals his judgment and sentence for second-degree murder. He raises a number of issues, including a challenge to the sufficiency of the evidence supporting the jury's finding of guilt. We find this issue requires reversal and remand for a new trial, but we also address an evidentiary issue that may arise on retrial.

The jury was instructed that the State would have to prove the following elements of second-degree murder:

> 1. On or about August 25, 2013, the defendant, individually or through joint criminal conduct or through aiding and abetting another, assaulted Richard Daughenbaugh.
> 2. Richard Daughenbaugh died as a result of being assaulted.
> 3. The defendant, individually or through joint criminal conduct or someone he aided and abetted, acted with malice aforethought.

Russell contends the State presented insufficient evidence to support the finding of guilt under any of the three theories: (1) individual conduct, (2) aiding and abetting, or (3) joint criminal conduct. "[W]e will uphold a verdict if substantial evidence supports it." *State* v. *Tyler*, 873 N.W.2d 741, 746-47 (Iowa 2016) (citations omitted).

## I. Sufficiency of the Evidence

### A. Individual Conduct

A reasonable juror could have found the facts as summarized in our opinion involving codefendant James Shorter, who was jointly tried with Russell. *See State v. Shorter*, No. 14-1239, 2016 WL _____, at *__ (Iowa Ct. App. June

15, 2016). Eyewitness Monica Perkins testified, "I remember [Russell] stomping on [Daughenbaugh]."

Russell does not raise a serious challenge to the jury's necessary finding of an assault. He focuses on the causation element and argues "[t]he blows that he allegedly delivered did not kill [Daughenbaugh]."

As explained in *Shorter*, the Iowa Supreme Court discussed causation in an opinion involving co-defendant Kent Tyler. *See State v. Tyler*, 873 N.W.2d 741, 747-49 (Iowa 2016). The court's discussion is controlling here. Just as Tyler's punch was a factual cause of Daughenbaugh's death, so too was Russell's blow. And, just as Tyler's punch satisfied the proximate cause or scope of liability test of causation, so too did Russell's blow. Substantial evidence supported the jury's finding of guilt against Russell as an individual actor.

### B.    Aiding and Abetting

Russell contends he "was not an active participant in the murder as he did not deliver the fatal blow(s) that ultimately killed [Daughenbaugh]," and "the State offered no evidence that he planned or entered into an agreement, hatched even that night, with the other individual(s) who actually caused the victim's death." A jury could have found otherwise for the same reasons discussed in *Shorter*. *See Shorter*, 2016 WL _____, at *__. The jury's finding of guilt under an aiding and abetting theory was supported by substantial evidence.

### C.    Joint Criminal Conduct

Russell contends "there was an insufficient showing that he was acting in concert with the other participants. . . . The blows to the victim appeared to be inflicted spontaneously by the participants in the heat of the moment." For the

reasons discussed in *Shorter*, we find substantial evidence that Shorter, Russell, and the others involved in the group attack acted in concert. *See Shorter*, 2016 WL _____, at *__. But, we find insufficient evidence of a second crime in furtherance of the group attack. As Russell contends, "The events happened so quickly and there appeared to be mass confusion." A second crime was difficult to discern. However, even if one could be gleaned, there was scant if any evidence of the sequence of assaults relative to Russell's kick. Accordingly, we find insufficient evidence to support the jury's finding of guilt under a joint criminal conduct theory.

Having found the joint criminal conduct theory unsupported by substantial evidence, we reverse and remand for a new trial because we have no way of knowing whether the jury found Russell guilty individually, as an aider and abettor, or under a theory of joint criminal conduct. *See Tyler*, 873 N.W.2d at 753-54. In light of our disposition, we find it unnecessary to address Russell's ineffective-assistance-of-counsel claim.

We will also address Russell's evidentiary claim, as it may arise on retrial.

## II.    *Evidentiary Issue*

At trial, the State called a teenager to the stand and asked her a series of questions about the events leading up to Daughenbaugh's death. She repeatedly answered, "I don't remember." When confronted with a transcript of an interview she gave police, she continued to demur, stating she did not remember talking to the officers. She also stated she did not recall the statements she made during Tyler's trial.

The district court concluded the teenager was "unavailable" to testify and her prior sworn statements during a deposition were admissible. *See* Iowa R. Evid. 5.804(a) (defining "unavailability as a witness" to include "situations in which the declarant: . . . Testifies to a lack of memory of the subject matter of the declarant's statement"); Iowa R. Evid. 5.804(b)(1) (providing that former testimony "given as a witness at another trial or hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding" is not excluded by the hearsay rule if the declarant is unavailable as a witness). As for her statements to police, the court concluded they would be admissible only for impeachment because they were unsworn. *See* Iowa R. Evid. 5.613(b). Finally, the court concluded that questions relating to the teenager's "identification of a person made after perceiving the person . . . would not be hearsay."

On appeal, Russell contends the State called the teenager "for the obvious purpose of subsequently putting before the jury otherwise impermissible hearsay evidence." Russell relies on *State v. Turecek*, 456 N.W.2d 219, 224 (Iowa 1990). There, the court stated, "The State is not entitled under [our impeachment rule] to place a witness on the stand who is expected to give unfavorable testimony and then, in the guise of impeachment, offer evidence which is otherwise inadmissible." *Turecek*, 456 N.W.2d at 225. The court continued, "To permit such bootstrapping frustrates the intended application of the exclusionary rules which rendered such evidence inadmissible on the State's case in chief." *Id.*

That is not what happened here. The State asked the teenager pertinent questions about the night of the murder and received non-committal responses. The district court allowed the State to impeach the teenager with her out-of-court statement only after the State laid this foundation. This is precisely the purpose of our impeachment rule. *See* Iowa R. Evid. 5.607 ("The credibility of a witness may be attacked by any party, including the party calling the witness."); *see also id.* advisory committee note.

The court also allowed the detective who interviewed the teenager to recount her identification of the people in a photograph taken on the night of Daughenbaugh's death. One of the people was Russell. Russell acknowledges a prior statement by a witness is not hearsay if "[t]he declarant testifies at trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . one of identification of a person made after perceiving him." Iowa R. Evid. 5.801(d)(1)(C). He argues "this exception to the hearsay rule does not apply because [the teenager's] prior statements went to the underlying facts of the crime, specifically that she saw him kicking the victim." We disagree. The State asked the detective whether the teenager identified a person in the picture. He responded, "Yes." The State then asked, "Who did she identify that as being?" The detective responded, "Yarvon Russell." The questions and answers related to identity. Because the statements were admissible to prove the truth of

the matter asserted, there was no *Turecek* violation.[1]  *See State v. Tompkins*,

859 N.W.2d 631, 639 (Iowa 2015).

**REVERSED AND REMANDED.**

---

[1] This case is distinguishable from *State v. Smith*, No. 13-1202, 2014 WL 7343226, at *3 (Iowa Ct. App. Dec. 24, 2014), in which this court found a victim's subsequently recanted out-of-court statement identifying the defendant as her attacker and offered by a police officer "constituted hearsay" where "the State did not question [the victim] about her identification . . . during its case in chief because of her recantation."  *See also State v. Bush*, No. 09-0150, 2010 WL 4484401, at *3-5 (Iowa Ct. App. Nov. 10, 2010) (finding *Turecek* violation where the State offered previously-recanted statements of witnesses).