# IN THE COURT OF APPEALS OF IOWA

No. 16-1881
Filed September 27, 2017

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**CHOROIN DEVONTEA SMITH,**
        Defendant-Appellant.

_____


        Appeal from the Iowa District Court for Black Hawk County, Bradley J. Harris (jury selection) and Kellyann M. Lekar (trial and posttrial motions), Judges.


        A defendant appeals his conviction challenging jury selection and the court's denial of his motion for a new trial.  **AFFIRMED.**


        Robert W. Conrad of Conrad Law Office, Knoxville, for appellant.

        Thomas J. Miller, Attorney General, and Zachary C. Miller, Assistant Attorney General, for appellee.


        Considered by Vogel, P.J., and Potterfield and Mullins, JJ.

**VOGEL, Presiding Judge.**

Choroin Smith was convicted following a jury trial of willful injury causing bodily injury, intimidation with a dangerous weapon with intent, and possession of a firearm as a felon. He claims (1) the district court was wrong to overrule his *Batson*[1] challenge to the State's strike of an African-American from the jury, (2) the court should have granted his challenge to the jury pool as not being a fair cross-section of the community, and (3) the State solicited improper impeachment testimony in violation of *State v. Turecek*, 456 N.W.2d 219, 225 (Iowa 1990). He also claims he is entitled to a new trial due to all of these errors.

**I. Background Facts and Proceedings.**

The underlying facts of the case are not pertinent to this appeal. It is sufficient to say Smith was convicted of shooting DeMarcus Green in the shoulder during an argument on the porch of a house in February 2015. Before trial, Smith moved in limine to prevent the State from admitting evidence from a witness, Deziaray Lewis, who, when deposed, recanted certain statements she initially made to police. In the motion, Smith asked the State be prohibited from questioning Lewis regarding "the events which transpired on the porch of 518 Rhey Street February 22, 201[5]," "any identification of any person alleged to have been seen with a gun," and "the identification of Choroin Smith as the person who . . . shot DeMarcus Green on the porch of 518 Rhey Street on February 22, 201[5]." *See Turecek*, 456 N.W.2d at 225 (holding the State may not "place a witness on the stand who is expected to give unfavorable testimony

---

[1] *See Batson v. Kentucky*, 476 U.S. 79, 89 (1986) (holding the Equal Protection Clause prevents prosecutors from using peremptory strikes to remove potential jurors based on race).

and then, in the guise of impeachment, offer evidence which is otherwise inadmissible.").

At the hearing on the motion in limine, the State asserted:

> Miss Deziaray Lewis made statements contrary to what she initially made. The State doesn't plan to go into her initial statement, but the State plans on calling her for the identification of the defendant as far as the defendant's presence there on the porch but not—initially she had said that he was the shooter and she could identify him as the shooter. I'm not going to ask her questions or try to impeach her with regards to that, but I believe I can ask her questions putting him on the porch because she did continue to testify to that in her deposition.

Defense counsel responded: "That's fine. That seems right to me." Defense counsel again reiterated on the first day of trial this understanding of the State's position regarding the testimony of Lewis:

> [The State] represented to me that he acknowledged that Deziaray Lewis did recant during her deposition. He will be putting her on the stand for the purpose of identifying Choroin Smith as a person who was on the porch at the time of the incident, and that he does not expect to get into any matter that she recanted on.

Following several days of testimony, the jury returned a verdict finding Smith guilty on all three counts. Smith's counsel filed a motion for a new trial asserting the State had violated the in limine order. The court denied the motion, and Smith was sentenced to a total term of incarceration of fifteen years. He now appeals.

## II. Scope and Standard of Review.

We review de novo constitutional claims based on the improper use of peremptory strikes, and we give "a great deal of deference to the district court's evaluation of credibility when determining the true motives of the attorney when making strikes." *State v. Mootz*, 808 N.W.2d 207, 214 (Iowa 2012). In addition,

we review de novo challenges to the constitutional right to have a fair cross-section of the community in the jury pool. *State v. Plain*, 898 N.W.2d 801, 810 (Iowa 2017). Our review of the district court's decision on a motion for a new trial is for abuse of discretion, *see State v. Nitcher*, 720 N.W.2d 547, 559 (Iowa 2006), though our review of an alleged *Turecek* violation is for the correction of errors at law, *see State v. Wixom*, 599 N.W.2d 481, 484 (Iowa Ct. App. 1999) ("[A]ll *Turecek* hearsay violations are reviewed for errors at law.").

## III. *Batson* Challenge.

Smith first claims the court erred in overruling his *Batson* challenge to the State's peremptory strike of an African-American juror during voir dire. The test for determining whether the State has used peremptory strikes in a racially discriminatory fashion is for the opponent of the challenge to first make out "a prima facie case of racial discrimination (step one)," and then "the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step two)" and "[i]f a race-neutral explanation is tendered, the trial court must then decide (step three) whether the opponent of the strike has proved purposeful racial discrimination." *Mootz*, 808 N.W.2d at 215 (citation omitted).

We doubt whether a prima facie case was established here in light of the fact that the State struck only one African-American, and this does not by itself raise "an inference of purposeful discrimination." S*ee State v. Knox*, 464 N.W.2d 445, 448 (Iowa 1990) (noting merely showing the State used a peremptory challenge to exclude the "sole" African-American juror did not alone satisfy a prima facie case of discrimination); *see also Mootz*, 808 N.W.2d at 215 ("In

determining whether the party objecting to the strike has made a prima facie case of purposeful discrimination, the court may consider all relevant circumstances, including a *pattern* of strikes against jurors of a particular race." (emphasis added)). However, we acknowledge that "[t]he prima facie case requirement . . . becomes moot when the party attempting to strike a juror offers a race-neutral explanation for the peremptory challenge." *Mootz*, 808 N.W.2d at 215.

Here, the State asserted it struck the juror in question because of her previous theft conviction and because she had a close relative that was convicted of a crime and in prison. The State went on to explain that it had struck all jurors with prior criminal convictions except those with alcohol-related convictions because of the implication alcohol played in the current case and also struck all those with family members in prison. The court accepted the State's race-neutral reasons, and denied the motion. We give deference to the district court's determination of the State's credibility and find no abuse of discretion in the court's denial of Smith's *Batson* challenge. *Id.* at 214.

## IV. Fair Cross-Section.

Next, Smith claims the jury pool of fifty-four people, of which only five were African-American, did not represent a fair cross-section of the community. After the jury was selected and impaneled,[2] defense counsel stated: "Your Honor, with

---

[2] We doubt whether error was preserved in this case. "As a general rule, objections to evidence must be raised at the earliest opportunity after the grounds for objection become apparent." *State v. Johnson*, 476 N.W.2d 330, 333 (Iowa 1991). The jury pool's racial composition would have been immediately apparent upon the commencement of voir dire, yet defense counsel waited until after voir dire was completed and the jury was sworn in to make the objection. *See id.* at 334 ("Defendant had ample opportunity to view the jury panel during the jury selection process, but failed

regard to the venire, there were only five African-Americans in the entire venire, and so I would like to double check the basis upon which venire is drawn and have that placed on the record." In response the district court stated:

> [I]t is my count that there were fifty-four people on the original panel. Of that I had six African-Americans, and if it was five, it may be. But that would still be approximately ten percent which is equal to the population and certainly within the standard deviation which is allowed to be an acceptable panel.

There is a three-part test for determining whether the constitutional right to an impartial jury has been violated by not having the jury drawn from a fair cross-section of the community. *See Duren v. Missouri*, 439 U.S. 357, 364 (1979).

> [T]he defendant must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Id.*

There is no question in this case regarding the first element. With respect to the second element, our supreme court recently issued an opinion wherein the court overruled its prior case law that only one statistical test—absolute disparity—was used to determine whether the distinctive group is underrepresented in the jury pool. *See Plain*, 898 N.W.2d at 826. The court ruled that defendants and the district courts may use "multiple analytical models" "when determining whether jury pools comport with the Sixth Amendment

---

to object to it during this time . . . ."). However, as the district court ruled on Smith's objection to the jury pool, we choose to address the merits of the claim. *See State v. Taylor*, 596 N.W.2d 55, 56 (Iowa 1999) ("We choose to pass [the defendant's] serious preservation-of-error problems and affirm on the merits.").

mandate of representativeness." *Id.* at 827. Other methods mentioned by the supreme court included comparative disparity and standard deviation. *Id.* at 822.

In ruling on Smith's motion, the district court in this case used only the absolute disparity method of determining representativeness, as the *Plain* case was issued after Smith's trial. However, we need not reverse this case as underrepresentation cannot be demonstrated under any of the newly approved methods. As noted in the *Plain* case, the composition of African-Americans in Black Hawk County, where both Plain and Smith were tried, is 8.9%. *Id.* at 821. A jury pool of fifty-four people containing five African-Americans represented 9.3% of the jury pool, making the absolute disparity negative 0.4 (the percentage of African-Americans in the pool exceeded the percentage of African-Americans in the county population). Under the comparative disparity method, the calculation amounts to a negative 4.4%. As explained by *Plain*, the higher comparative disparity percentage, the less representative the jury pool. *Id.* at 823. In addition, the jury pool composition compared to the county population fell well within the standard deviation. *See Castaneda v. Partida*, 430 U.S. 482, 496 n.17 (1977) (articulating how to calculate the standard deviation and noting "if the difference between the expected value and the observed number is greater than two or three standard deviations, then the hypothesis that the jury drawing was random would be suspect to a social scientist"). Because Smith cannot demonstrate underrepresentation in the jury pool for his case under any method currently adopted by our state, he cannot establish the second element of the *Duren* test. The court correctly denied his challenge to the jury pool.

**V.  *Turecek* Violation.**

Finally, Smith asserts the State violated the court's in limine order and violated *Turecek* when eliciting testimony from Officer Brice Lippert regarding whether Lewis was on the porch at the time of the shooting.  Officer Lippert's testimony was not the subject of the motion in limine, defense counsel did not object during trial to Officer Lippert's testimony, and this testimony was not part of defense counsel's motion for a new trial.  We agree with the State's assertion that Smith failed to preserve error on his claim that Officer Lippert's testimony in some way a violation of the order in limine or the holding in *Turecek*.  *See Lamasters v. State*, 821 N.W.2d 856, 864 (Iowa 2012) (noting for error to be preserved the record must indicate "the court considered the issue and necessarily ruled on it").

Even if error had been preserved, Smith's claim on appeal has no merit.  The parties' articulation of the agreement following the motion in limine was that Lewis would testify that Smith was on the porch at the time of the incident.  At trial, Lewis testified she was on the porch with Smith, Green, and others, having just paid for pizza at the time the shot was fired.  Officer Lippert's testimony that Lewis was on the porch at the time of the shooting was cumulative to Lewis's own testimony and in no way impeached it.

**VI.  Conclusion.**

We find no constitutional violation in the State's use of its peremptory strike or the composition of the jury pool.  In addition, we conclude Smith failed to preserve error on his claim the State violated *Turecek* or the court's in limine

order. In light of these conclusions, we determine Smith is not entitled to a new trial and affirm his conviction and sentence.

**AFFIRMED.**