# IN THE COURT OF APPEALS OF IOWA

No. 16-1590
Filed January 10, 2018

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**DERRICK JANES,**
        Defendant-Appellant.
_____


Appeal from the Iowa District Court for Boone County, Paul G. Crawford, District Associate Judge.


Derrick Janes appeals from the judgment and sentence entered upon his conviction for child endangerment. **AFFIRMED.**


Mark C. Smith, State Appellate Defender, and Melinda J. Nye, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Bridget A. Chambers, Assistant Attorney General, for appellee.


Considered by Vaitheswaran, P.J., Potterfield, J., and Mahan, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2018).

**MAHAN, Senior Judge.**

Derrick Janes appeals from the judgment and sentence imposed upon his conviction for child endangerment, in violation of Iowa Code section 726.6(1)(a) (2016). He contends there is insufficient evidence that he acted with knowledge that he was creating a substantial risk to the child's health or safety. Janes also asserts the court abused its discretion in denying his motion for mistrial due to prosecutorial misconduct, his trial counsel was ineffective, and the court abused its discretion in considering improper factors in sentencing him. Finding no error or abuse of discretion, we affirm.

**I. Background Facts.**

Janes was providing care for his girlfriend's two-year-old child from about 4:00 p.m. on March 15 to approximately 2:45 a.m. on March 16, 2016, in the apartment in which Janes resided with the child and the child's mother. During the time he was caring for the child, Janes was visited by five people, two of whom he did not know. The child was in the living room of the apartment while Janes and the others smoked methamphetamine throughout the night in another room. The mother of the child returned home about 2:45 a.m., spoke with Janes for about an hour, and then fell asleep.

On March 16, the mother and Janes discovered the child had injuries to his head, ears, and shoulder that were not present the day before. The mother took the child to the emergency room (E.R.) later that afternoon. Medical personnel documented severe bruising to both the child's ears, bruising on the child's left temple and cheek, bruising on the child's left shoulder, an abrasion on the back of the child's head, and "defensive" bruising on the outer edge of the

child's palms. In addition to these "newer" bruises,[1] E.R. personnel noted a "yellowish" bruise on the child's right thigh.

In a March 18 statement to Detective John Mayse, Janes acknowledged he was at home with the child during the evening of March 15, he and the child's mother had smoked methamphetamine together before the mother left that afternoon, and "he was irritated that [the mother] hadn't come home." Janes told Detective Mayse that he had some friends come over about 8:00 p.m. and they brought a couple other people with whom Janes was not familiar. Janes stated he left the child in the living room, and he and the friends went into the bedroom where they smoked methamphetamine. Janes told the police officer he would watch the child "by opening the door and seeing what [the child] was doing. And when they were smoking, he would then shut the door to the bedroom." Janes told the officer "he had no idea how [the child] got the injuries. He didn't hear [the child] fall. He said he did not hear [the child] cry."

Detective Mayse testified Janes stated all the adults smoked methamphetamine and "everybody took at least ten hits from a pipe." Detective Mayse explained he asked Janes about the drug use because "meth affects the body severely." He continued,

> Meth ramps up your adrenaline system. Basically raises your heart rate. You can go through really severe mood swings from—I mean, to really sad, just crying, to severe anger, to severe anxiety, to severe paranoia, to the point where you start seeing things, hearing things that aren't there.
> But the mood swings can be really severe. It can change really quickly from an emotion, crying hysterically, to severe anger

---

[1] The E.R. nurse testified, "[N]ew bruises start out as red, maybe a little purplish, and then they turn towards, you know, days later greenish, yellowish, you get more of the colors the older it gets."

to where—out-of-control anger. So, yes, I mean, to the extreme that, you know, meth can keep—basically keeps you awake. Not care. You can become very annoying [sic] of what's going on in your surroundings.

Janes was found guilty of child endangerment following a jury trial. He now appeals.

## II. Scope and Standards of Review.

We review claims of sufficiency of the evidence for errors of law. *State v. Howse*, 875 N.W.2d 684, 688 (Iowa 2016). Our review of claims of ineffective assistance of counsel, as with all constitutional issues, is de novo. *See State v. Ortiz*, ___ N.W.2d ___, ___, 2017 WL 6391646, at *3 (Iowa 2017).

As for claims of sentencing error, our review is for correction of errors at law. *State v. Formaro*, 638 N.W.2d 720, 724 (Iowa 2002). "We will not reverse the decision of the district court absent an abuse of discretion or some defect in the sentencing procedure." *Id.* "When assessing a district court's decision for abuse of discretion, we only reverse if the district court's decision rested on grounds or reasoning that were clearly untenable or clearly unreasonable." *State v. Plain*, 898 N.W.2d 801, 811 (Iowa 2017).

## III. Discussion.

***A. Sufficiency of evidence.*** The jury was instructed that in order to convict Janes of child endangerment, the State was required to prove beyond a reasonable doubt that:

> 1. On or about March 15 or 16, 2016, [Janes] was either:
> (a) a member of the household in which the child B.C. resided; or
> (b) the person having control over the child B.C.
> 2. B.C. was under the age of fourteen (14) years.

3. [Janes] acted with knowledge that he was creating a substantial risk to B.C.'s physical, mental, or emotional health or safety.

"[T]he definition of 'substantial risk' in the context of child endangerment" means "[t]he very real possibility of danger to a child's physical health or safety." *State v. Anspach*, 627 N.W.2d 227, 233 (Iowa 2001). The risk does not have to be likely, just real or articulable. *Id.* at 232-33.

Janes first contends there is insufficient evidence that he acted with knowledge that he was creating a substantial risk to the child's health or safety.

> We view the evidence "in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence." We uphold the verdict if substantial evidence in the record supports it. "Evidence is . . . substantial if, when viewed in the light most favorable to the State, it can convince a rational jury that the defendant is guilty beyond a reasonable doubt."

*Ortiz*, ___ N.W.2d at ____, 2017 WL 6391646, at *4 (citations omitted).

The State established Janes was the person having control of the two-year-old child from the evening of March 15 through the early morning hours of March 16. The child did not have injuries to his head, face, and shoulder before Janes began caring for him. A two-year-old child is not capable of caring for or protecting himself. Janes and five others he invited into the residence—two of whom he did not know—spent several hours smoking methamphetamine while Janes was in control of the child. Viewing the evidence in the light most favorable to the State, the jury could reasonably infer Janes was aware methamphetamine use by adults in the presence of a child created a substantial risk of danger to the child's physical, mental, or emotional health or safety.

***B. Prosecutorial misconduct.*** Janes also asserts the court erred in denying his motion for mistrial due to prosecutorial misconduct. Our task is to determine whether Janes was denied his constitutional right to a fair trial due to prosecutorial misconduct or error. *See Plain*, 898 N.W.2d at 817. "In order to establish a violation of the right to a fair trial, a defendant must show both (1) error or misconduct and (2) prejudice." *Id.* at 818.

When the prosecutor was asking the mother about the child's injuries, the following exchange occurred:

> A. The top one is a picture of the outside of his left hand and the bottom one is a picture of the palm of his left hand.
> Q. Okay. And those are [the child's] hands? A. Yes.
> Q. And are those—there appears there's bruises on those hands; is that correct? A. Yes.
> Q. And did he have bruises on those hands on March 16th of 2016 that you noticed? A. These are the bruises that he had prior to this.
> Q. He had those on March 15th before you left the house that morning? A. Yes.
> Q. And he had those bruises on March 15th before you left the house that afternoon? A. Yes.
> Q. And how long has he had those bruises for? A. Ever since I remember. I asked his pediatrician about it, and she told me they are not bruises.
> Q. And is this that pediatrician in Ames? A. Yes.
> Q. And what's that pediatrician's name? A. Heidi Mittelstaedt.
> Q. And when's the last time Heidi Mittelstaedt looked at the child? A. In April or May.
> Q. Does he still have those bruises on his hands? A. Yes.
> . . . .
> Q. Did he have any bruising on his right hand when you took him to the E.R.? A. The E.R., I guess, the nurse said that's bruising, but Heidi [Mittelstaedt] said it's not.
> Q. And I'm going to have to—we only can talk about what people actually saw and is going to testify in court. So I know you're trying to help out Derrick here, but we can't—

Defense counsel objected. Outside the presence of the jury, defense counsel objected, stating:

> Thank you, Your Honor. On direct examination I'd lodge an objection as to relevance when the State began questioning [the mother] about whether or not she has maintained a relationship with Derrick since this incident. We had a bench conference where I said that the basis for my objection to this line of questioning was that the State was calling this witness and impeaching them, that they're not allowed to impeach their own witness. I think the rules are relatively clear on that.
>
> At that time the court's ruling was that they weren't going into impeachment. At this point I would lodge an objection to [the prosecutor's] most recent statement as being him testifying, and also clearly for the sole purpose of impeaching [the mother]. I believe that that statement is extremely prejudicial to the jury, and at this time, Your Honor, I move for a mistrial.

The court ruled, "I don't see the State calling the witness to impeach her. I think []he's sorting out what is a potential new injury during the time frame when the child was left in the defendant's custody and what was a preexisting injury."

The court then addressed the prosecutor:

> I'm sure this is just an offhand comment in the heat of the moment of dealing with a potential witness concern, but don't comment on the witness saying, "Oh, I know you're just here to testify for Derrick," or, "You're trying to help Derrick." That's not something you should be saying, and it's—[defense counsel] was correct in objecting, but, you know, looking at the whole, you know, back and forth that's been going on between Exhibit 3 and leading into Exhibit 5, I can see where the witness has been volunteering information that doesn't necessarily comport with the State's theory of the case. I could see why your, you know, angst is potentially present, but you've got to reign it in.

Our supreme court has recently noted the distinction between prosecutorial misconduct and prosecutorial error. *State v. Schlitter*, 881 N.W.2d 380, 394 (Iowa 2016).

> Prosecutorial misconduct includes those statements "where a prosecutor intentionally violates a clear and unambiguous

obligation or standard imposed by law, applicable rule or professional conduct," as well as "those situations where a prosecutor recklessly disregards a duty to comply with an obligation or standard." Prosecutorial error occurs "where the prosecutor exercises poor judgment" and "where the attorney has made a mistake" based on "excusable human error, despite the attorney's use of reasonable care." . . . A prosecutor who has committed error should not be described as committing misconduct.

*Id.* (citations omitted).

The prosecutor "may attack the witness's credibility." *See* Iowa R. Evid. 5.607 ("Any party, including the party that called the witness, may attack the witness's credibility."). However, the prosecutor is not allowed to place a witness on the stand who it expects to give unfavorable testimony solely for the purpose of introducing otherwise inadmissible evidence. *State v. Turecek*, 456 N.W.2d 219, 225 (Iowa 1990); *see also State v. Tracy*, 482 N.W.2d 675, 679 (Iowa 1992). Viewing the entirety of the prosecutor's questioning of the mother in the case before us, we agree with the district court that the prosecutor did not call the mother solely for the purpose of impeaching her.

We also agree the trial court was correct in admonishing the prosecutor's statement, "So I know you're trying to help out Derrick here . . . ." However, we are not convinced the prosecutor's isolated comment deprived Janes of a fair trial. *See Plain*, 898 N.W.2d at 818-19 ("[W]e first determine whether the prosecutor violated a duty to the defendant. If so, we consider whether that violation was intentional or reckless. An intentional or reckless violation amounts to prosecutorial misconduct while an unintentional violation amounts only to prosecutorial error. We then determine whether the error caused prejudice." (citations omitted)).

***C. Ineffective assistance of counsel.*** Next, Janes contends his trial counsel was ineffective in failing to object to and move to strike various statements by the child's grandfather at trial.

> Ineffective assistance of counsel constitutes "deficient performance by counsel resulting in prejudice, with performance being measured against an 'objective standard of reasonableness,' under prevailing professional norms." "[N]ot every claim of ineffective assistance, even a meritorious one, requires reversal of a criminal conviction." To prevail on a claim of ineffective assistance of counsel, a claimant must satisfy the *Strickland* [*v. Washington*, 466 U.S. 668, 687 (1984),] test by showing "(1) counsel failed to perform an essential duty; and (2) prejudice resulted." "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable."

*State v. Clay*, 824 N.W.2d 488, 494-95 (Iowa 2012) (citations omitted). Unless the appellate record is adequate, we ordinarily preserve such claims for postconviction relief proceedings. *Id.* at 494.

Janes asserts trial counsel should have objected on hearsay grounds when the grandfather testified that Janes answered "I don't know" when asked how the child's injuries occurred.[2] But statements of the defendant are not hearsay. *See* Iowa R. Evid. 5.801(d)(2) (noting a statement "offered against a party" and which is "the party's own statement" is not hearsay); *State v. Newell*, 710 N.W.2d 6, 18 (Iowa 2006) (citing evidence rule 5.801(d)(2)). Trial counsel

---

[2] The child's grandfather testified he came from Missouri on March 17 to pick up the child. The grandfather testified at trial:

> [T]he first thing that stuck out was severe bruising of both ears. He had a pretty good lump on his cheek, but his ears were purple. The top half of his ears were purple. A bruise just starting in a lump on his cheek. A bruise on the back of his head.
>
> There was a bruise on the top part of his leg, but we had him for the next [nineteen] days and that bruise could have been from that particular incident, or maybe not, on his leg. It seemed to be a different color than the rest.

has no duty to make a motion that has no merit. *State v. Graves*, 668 N.W.2d 860, 881 (Iowa 2003).

Janes also argues counsel should have objected when the grandfather opined the marks on the child's ears "were straight marks that a pair of pliers being pinched would make." Defense counsel did not immediately object but did ask that the jury be excused. With the jury gone, defense counsel stated:

> I just want to acknowledge I think that this witness clearly cares very much for his grandson . . . . However, he continues to be nonresponsive to questions. So I would just ask that the court admonish him. I didn't want to do this in front of the jury, but I would ask the court admonish him that he needs to answer the questions that are asked instead of saying what he wants to say.

Questioning resumed after the prosecutor and the grandfather spoke in private.

Janes contends "the prejudicial remark about pliers deprived [him] of a fair trial." The State asserts trial counsel "likely made a reasonable tactical decision not to object on rule 5.403 grounds" as to do so would only have emphasized the testimony. We need not address whether counsel should have objected because Janes cannot show that he was prejudiced by counsel's failure to object and move to strike the testimony. The photograph of the injuries reveals straight marks on the child's one ear. The jury also saw photographs of the injuries that showed bruising to the insides and backs of the child's ears. The E.R. nurse who examined the child described the marks as appearing to have been made with someone's fingers. The physician who examined the child testified the injuries she observed are "usually inflicted by someone." Janes has not met his burden to show a reasonable probability that he would have been acquitted if counsel had objected to the grandfather's testimony as unduly prejudicial.

***D. Abuse of sentencing discretion.*** Finally, Janes argues the court abused its discretion in considering an improper factor in sentencing him. "The imposition of a sentence is generally within the discretion of the trial court and will be disturbed only upon a showing of abuse of discretion." *State v. Thomas*, 520 N.W.2d 311, 313 (Iowa Ct. App. 1994). "The use of an impermissible factor is viewed as an abuse of discretion and requires resentencing." *Id.*

Janes asserts the court enunciated an inaccurate fact—that the child had "mental and physical deficiencies." While the court did use that phrase, in context, we believe it is clear the court was considering the child's inability to protect himself. The court noted the child "was just two years old" and was "not able to verbalize effectively his needs." The court stressed Janes's "horrible prioritization of conduct," that is, choosing to use drugs "instead of watching out for a two-year-old child [who] can't take care of himself." This is not an improper factor. *See State v. Hopkins*, 860 N.W.2d 550, 554-55 (Iowa 2015) (noting relevant factors include "the nature of the offense" and "attending circumstances"). We find no abuse of discretion, and we therefore affirm.

**AFFIRMED.**