# IN THE COURT OF APPEALS OF IOWA

No. 17-1668
Filed April 3, 2019

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**CLAY THOMAS PAULSON,**
    Defendant-Appellant.

_____

Appeal from the Iowa District Court for Boone County, Paul G. Crawford,
District Associate Judge.

Clay Thomas Paulson appeals his convictions and sentence for suborning
perjury and solicitation to suborn perjury. **REVERSED AND REMANDED.**

John L. Dirks of Dirks Law Firm, Ames, for appellant.

Thomas J. Miller, Attorney General, and Kyle Hanson, Assistant Attorney
General, for appellee.

Considered by Vogel, C.J., and Vaitheswaran and Doyle, JJ.

**VAITHESWARAN, Judge.**

Following a vehicle stop, Boone police officers discovered drugs in a black, star-covered backpack situated on the floorboard near where Clay Thomas Paulson had been seated. A woman told an officer she saw Paulson with the backpack. The State charged him with several drug-related crimes, a jury found him guilty, and this court affirmed his judgment and sentence. *See State v. Paulson*, No. 17-2097, 2018 WL 6706221, at *2–3 (Iowa Ct. App. Dec. 19, 2018).

Before his trial in the drug case, Paulson texted a friend, seeking to have the woman "take her statement back." In a later deposition, the woman stated she "did not tell" the officer the backpack "belonged to Clay Paulson."

The State separately charged Paulson with suborning perjury and solicitation to suborn perjury. A jury found Paulson guilty as charged and imposed sentence.

On appeal from the perjury convictions, Paulson argues (1) the evidence was insufficient evidence to support the jury's findings of guilt and (2) the district court erred in admitting hearsay evidence.

## I. *Sufficiency of the Evidence*

The jury was instructed that the State would have to prove the following elements of suborning perjury:

1. On or about the 22nd day of December, 2016, the defendant procured a second person to make a statement of fact.
2. The statement of fact was to be made under oath.
3. The statement was false.
4. The defendant knew the statement was false when he procured the second person to make it.
5. The procurement was made to a second person by the defendant with the intent that the second person would make the false statement.

The jury also was instructed the State would have to prove the following elements of solicitation to suborn perjury:

> 1. On or about the 22nd day of December, 2016, the defendant solicited another to commit Suborning Perjury.
> 2. The defendant intended that Suborning Perjury would be committed.
> 3. The defendant's intent is corroborated by clear and convincing evidence.

The State called the officer who interviewed the woman as a witness. He was asked, "Did you . . . have a chance to talk to [the woman] about the backpack?" The officer responded, "Right towards the end of our conversation I asked her if on that Friday evening if Mr. Paulson had a backpack with him, and she say yes. Her words were 'star backpack.'" He stated they had not "discussed the backpack at all" before he asked the question.[1] The State introduced a videotape of the police interview.

The State also introduced text messages Paulson was allowed to send from jail. One of them to a friend stated, "[A] pissed off girl said that was my bag have [the woman] take her statement back."

The woman did not appear for trial. At the State's request, and over the objections of the defense, the district court admitted her deposition testimony in lieu of live testimony.

On appeal, Paulson does not take issue with the district court's admission of the woman's deposition testimony. He focuses on the statement the woman

---

[1] Paulson challenges the district court's admission of this statement. We are obligated to consider it in evaluating the sufficiency of the evidence. *See State v. Dullard*, 668 N.W.2d 585, 597 (Iowa 2003) ("In determining whether retrial is permissible all the evidence admitted during the trial, including erroneously admitted evidence, must be considered.").

made to the officer. In his view, her affirmation that he had a "star backpack" required the jury to speculate "that she had seen [him] in possession of the [backpack], and that she had spoken truthfully." Paulson concedes credibility determinations are for the jury but asserts "the jury never had the opportunity to evaluate [the woman's] testimony, because she did not testify and she was not subjected to cross-examination." Paulson also argues there was no direct evidence that the woman was contacted by the person Paulson texted in an effort to have her retract her statement to the officer.

Paulson is indeed correct that credibility determinations generally are for the trier of fact. *See State v. Weaver*, 608 N.W. 797, 804 (Iowa 2000). And he is correct that jurors did not have the benefit of seeing the woman on the witness stand. But they could have evaluated the officer's narration of her statement in light of the video recording of the police interview, and they could have found that the recording corroborated his testimony.

As for the absence of direct evidence that the woman was pressured to retract her statement, the jury could have found the State proved subornation and solicitation of perjury with Paulson's text message and the woman's deposition testimony denying her statement to police. *See State v. Kelso-Christy*, 911 N.W.2d 663, 668 (Iowa 2018) ("Direct and circumstantial evidence are equally probative.").

We conclude substantial evidence supported the elements of both crimes. *See State v. Serrato*, 787 N.W.2d 462, 465 (Iowa 2010) (setting forth standard of review).

## II. *Admission of Hearsay Evidence*

Before trial began, the defense objected to admission of the woman's statement to the police officer about Paulson's possession of the star backpack. The district court overruled the objections and found the statement admissible. The court relied on the woman's unavailability, the case of *State v. Turecek*, 456 N.W.2d 219, 224 (Iowa 1990), and the forfeiture-by-wrongding exception to the hearsay rule.

Paulson appeals the district court's ruling. He argues (1) the statement was hearsay, (2) the district court misapplied the holding of *Turecek* to admit rather than exclude the statement, and (3) the "forfeiture-by-wrongdoing" exception to the hearsay rule did not apply.

Hearsay is defined as a statement "the declarant does not make while testifying at the current trial" that is offered "to prove the truth of the matter asserted in the statement." Iowa R. Evid. 5.801(c). Hearsay evidence generally is inadmissible. Iowa R. Evid. 5.802. Our review of hearsay rulings is for errors of law. *State v. Huser*, 894 N.W.2d 472, 495 (Iowa 2017).[2]

The woman's statement, offered through the officer, established that Paulson had a star backpack. Without the statement, the State could not prove Paulson had any reason to convince the woman to falsify her statement under oath or had any reason to solicit someone to subporn perjury. We conclude the

---

[2] In *State v. Hallum*, 600 N.W.2d 351, 354 (Iowa 2000), the court reviewed the district court's application of the forfeiture-by-wrongdoing exception de novo after concluding it "involve[d] a loss of the constitutional right to confront" accusers. But, there, the defendant raised a Confrontation Clause objection in addition to a hearsay objection. Paulson did not. Although he asks us to consider such an objection under an ineffective-assistance-of-counsel rubric, our disposition makes it unnecessary to preserve or decide whether admission of the statement violated the Confrontation Clause.

woman's statement as recounted by the police officer was offered to prove the truth of the matter asserted and, accordingly, was hearsay.

We turn to *Turecek*, an opinion cited by the district court in admitting the statement. *See* 456 N.W.2d at 224. There, the Iowa Supreme Court addressed whether the State could admit hearsay evidence in the guise of impeachment. The court held:

> The right given to the State to impeach its own witnesses . . . is to be used as a shield and not as a sword. The State is not entitled . . . to place a witness on the stand who is expected to give unfavorable testimony and then, in the guise of impeachment, offer evidence which is otherwise inadmissible. To permit such bootstrapping frustrates the intended application of the exclusionary rules which rendered such evidence inadmissible on the State's case in chief.

*Id.* at 225.

As noted, the woman failed to appear at Paulson's perjury trial, and the State was allowed to admit her deposition testimony in lieu of live testimony. During the deposition, the woman denied under oath that Paulson had the starred backpack. The State introduced her deposition testimony and impeached her testimony with her prior statement to the officer affirming Paulson's possession of the starred backpack.

The hearsay statement would not have entered the record but for the admission of the woman's deposition testimony. The district court acknowledged as much, stating, "[T]he only way the State can call [the woman] to impeach her is to set her up with did you say X to [the officer] and then did you say Y in your deposition and they don't mesh. So I think that's the way the State gets in the interview statement of [the woman]." The court further stated, "[O]dds are is that

the only reason the State would be calling [the woman] today would be to try and impeach her statement from the deposition that the State doesn't like."

The State committed a *Turecek* violation by seeking to admit otherwise inadmissible hearsay evidence. *See State v. Russell*, 893 N.W.2d 307, 316 (Iowa 2017) ("But even accepting the State's approach to *Turecek*, it is hard to see what the State sought to accomplish by calling T.T. as a witness other than to gain admission of T.T.'s prior statement that Russell had kicked Daughenbaugh through an impeachment effort."); *State v. Werts*, 677 N.W.2d 734, 737 (Iowa 2004) (noting admission of certain impeachment evidence "had all the attributes of a setup"); *State v. Tracy*, 482 N.W.2d 675, 679 (Iowa 1992) ("Given that the record clearly reveals that the State knew K.A. intended to retract the allegations of sexual abuse she had formerly made, we must assume the State orchestrated this series of events merely to place before the trier of fact various items of evidence that would otherwise be inadmissible.").

This conclusion does not end our inquiry. We must next determine "whether any of the inconsistent statements identified in the impeachment of [the woman] by the State were admissible on any grounds." *Russell*, 893 N.W.2d at 316.

The State argues the statement to the officer was "admissible under the 'forfeiture by wrongdoing' exception to the hearsay rule." That exception is grounded in Iowa Rule of Evidence 5.804(b)(6). Under the rule, the following is not excluded by the rule against hearsay if the declarant is unavailable: "A statement offered against a party that wrongfully caused—or acquiesced in wrongfully causing—the declarant's unavailability as a witness, and did so intending that result." Iowa R. Evid. 5.804(b)(6).

Assuming the woman was unavailable—an assertion Paulson contests—we turn to whether Paulson wrongfully procured the woman's unavailability at trial. The State makes the following argument: "A jury concluded [Paulson] suborned [the woman's] perjury. That same act secured the unavailability of her truthful testimony at trial. Because he wrongfully caused her unavailability, he forfeited his right to object to the admissiblilty of her prior out-of-court statement."

The State's argument puts the cart before the horse. "[T]he question of wrongful procurement is one of fact and therefore must be determined prior to the admission of secondary evidence." *State v. Hallum*, 606 N.W.2d 351, 355 (Iowa 2000) (citing *Reynolds v. United States*, 98 U.S. 145, 159 (1878)); *accord State v. Campbell*, No. 10-0117, 2013 WL 4011071, at *6 (Iowa Ct. App. Aug. 7, 2013) ("The determination of whether Campbell procured [the woman's] unavailability at trial must be made in an evidentiary hearing in the absence of the jury, which took place before the presentation of evidence here.").

In *Hallum*, the defendant's brother, who had inculpated the defendant in a videotaped police interview, was incarcerated for refusing to testify against him. 606 N.W.2d at 356. The State filed a pretrial motion to have the videotaped statement admitted pursuant to the forfeiture by wrongdoing exception. *Id.* At an evidentiary hearing on the motion, the State offered correspondence from the defendant to his brother advising him to "hang in there." *Id.* The State also offered a letter from the brother to the defendant informing him he could not handle it anymore and implying he would break down and testify if the defendant chose to go to trial. *Id.* at 356–57. At the hearing, the brother testified his family left him and he would have done anything to get them back, including testifying against the

defendant. *Id.* at 357. The Iowa Supreme Court held "the defendant procured the brother's unavailability as a witness at trial by encouraging and influencing [him] not to testify." *Id.* at 358.

Similarly, in *Campbell*, a woman subjected to domestic abuse assault failed to appear at trial. 2013 WL 4011071, at *6. The State sought to admit inculpatory jailhouse recordings of conversations between the defendant and the woman. *Id.* at *2. The district court determined the defendant procured the woman's unavailability at trial, rendering the recordings admissible. *Id.* This court agreed, noting the defendant's statements "demonstrate [the defendant] intended to prevent [the woman] from testifying." *Id.* at *6. We cited the defendant's instruction "to flee to a friend's house to avoid being subpoenaed," his statement that "she would be arrested and jailed if she did not flee," and his instruction that "she should not testify and that if she was found in contempt of court that was nothing to worry about." *Id.*

The State failed to make a similar showing here. *See Hallum*, 606 N.W.2d at 355 (noting "[t]he State bears the burden to prove that the defendant has wrongfully procured the witness's unavailability"). By the prosecutor's own admission, the woman was not served with a subpoena to appear at trial until 6:00 p.m. on the night before trial began. The State proffered no evidence to support a finding that the woman declined to appear for trial at Paulson's behest or at the behest of the person Paulson had texted ten-and-a-half months earlier.[3] To the

---

[3] The State discussed the evidence it intended to offer in support of the perjury charges, including the woman's deposition testimony and her statement to police, but did not independently tie Paulson to the woman's non-appearance at trial.

contrary, the prosecutor informed the court the woman had "been calling" and "e-mailing" him and advised him she had a dentist appointment in Iowa City on the day of trial and intended to keep the appointment. There was no indication her stated reasons for failing to appear were a subterfuge.

We conclude the State failed to prove the woman's statement to the police officer concerning Paulson's possession of a starred backpack was admissible under the forfeiture-by-wrongdoing exception to the hearsay rule. Because the evidence was inadmissible, we reverse and remand for a new trial.

**REVERSED AND REMANDED.**