**STATE of Iowa, Plaintiff-Appellee,**

v.

**Doris Ann WOLFE, Defendant-Appellant.**

**No. 65666.**

Court of Appeals of Iowa.

Dec. 30, 1981.

Douglas F. Staskal, Appellate Defender's Office, Des Moines, for defendant-appellant.

Thomas J. Miller, Atty. Gen., and Thomas Martin, Asst. Atty. Gen., for plaintiff-appellee.

Heard by OXBERGER, C. J., and DONIELSON, CARTER and JOHNSON, JJ.

CARTER, Justice.

The defendant appeals from her conviction of second degree murder in violation of sections 707.1 and 707.3, The Code. The sole issue urged for reversal is her contention that the trial court erred by admitting evidence of a witness's prior inconsistent statement for impeachment purposes. We find that the statement was properly admitted and therefore affirm the trial court.

On October 12, 1979, the body of a man identified as Kenneth Teer was found floating in Maffitt Reservoir, a lake just south of Des Moines. Autopsy reports, although not definitive, determined that Teer died of gunshot, drowning, or a combination thereof. Following investigation into Teer's death, a trial information was filed on December 4, 1979, charging Doris Wolfe, the defendant here, and her sons Lane and Randy Wolfe with murder in the first degree. Randy was subsequently granted immunity and he testified for the State and against his mother and brother in separate trials. On July 14, 1980, a jury returned its verdict in the present case, finding defendant guilty of murder in the second degree.

At trial the State's main witnesses were defendant's nephew, Jeff Madison, and her son, Randy. Neither had been present when Teer was actually killed, but both testified as to what defendant and Lane Wolfe (who had been present) had told them about the killing during several conversations between the time of the victim's death on October 1 and the discovery of the body on October 12. Randy Wolfe had given statements to Department of Criminal Investigation agent Roger Downs during the latter's investigation of the crime. Agent Downs had summarized his notes from questioning Randy, and this thirty-three page unsigned and unsworn document was used periodically throughout Randy's testimony at defendant's trial to refresh his

recollection. Ultimately, the State sought to impeach Randy by means of a statement he had made to Downs which was deemed to be inconsistent with his subsequent testimony at defendant's trial. The substance of the allegedly inconsistent statement was contained in a stipulation of the parties made subject to defendant's objection that the contents of the stipulation was improper impeachment and otherwise inadmissible hearsay. The trial court overruled the objection and permitted the reading of the stipulation to the jury.

On appeal, defendant urges this court to find that reversible error occurred by the reading of this stipulation. In reviewing this claim, we initially note that any party may impeach a witness, including the party calling him. *State v. Trost*, 244 N.W.2d 556, 559–60 (Iowa 1976). Randy Wolfe, under grant of immunity, was called to testify for the State, which subsequently sought to impeach him. Before a witness's testimony may be impeached, however, certain procedures must be followed. If the examiner believes that the witness is testifying at trial in a manner at variance with some prior statement, he must lay a proper foundation before being able to introduce the prior statement. The laying of this foundation is necessary in order to warn the witness that some other statement is intended to be used so that the witness may be ready to deny the prior statement or explain what he said previously if he plans to admit making the statement. *State v. Gilmore*, 259 N.W.2d 846, 853 (Iowa 1977). Once the witness's attention is drawn to the prior statement, if he admits making the prior inconsistent statement, then that prior statement is not admissible. But if he denies making the prior statement, or is evasive in his answer, or cannot remember making it at all, then the statement may be admitted into evidence for purposes of impeachment. *State v. Gilmore*, 259 N.W.2d at 857. In addition, matters upon which impeachment is attempted must be relevant to some issue in the case. 3A, Wigmore on Evidence (Chadbourn Rev.), sections 1004–05 at 965–66.

In the present case the entire testimony by Randy had followed a pattern of questioning, answering, reading silently from Agent Downs' document by Randy to refresh his recollection, and then answering again. During Randy's testimony, he indicated that he did not arrive at the scene of the shooting until after Teer had been shot and that he had no personal knowledge of what transpired prior to the shooting. He testified that he had been told by the defendant that Teer had come over to discuss family problems, that defendant was reluctant to talk to Teer, but Teer became aggressive towards defendant, and that Lane came up from downstairs to assist defendant. Randy further testified that defendant had told him that Teer then directed his aggression towards Lane, defendant then got a gun, fired a warning shot, and then a struggle ensued with Teer over the gun during which Teer was accidentally shot.

At this point, the State inquired of Randy as to whether he had told agent Downs that Lane was present with defendant prior to the shooting and that the two of them had questioned Teer about property which had turned up missing from defendant's house. Randy was given an opportunity to read a summary of the alleged statement and then replied: "I don't know" and later "No, sir."

After foundational and hearsay objections by defendant outside the presence of the jury, a stipulation as to Randy's prior statements on this matter was read into the record by the State. The stipulation, admitted over objection, was as follows:

Ladies and gentlemen of the jury, the following stipulation has been reached or agreed to. That if Special Agent Roger Downs were to testify this morning he would testify to matters contained in a statement of October 27, 1979, in which Randy Wolfe made certain statements to Roger Downs, Agent Sam Swain and Assistant Polk County Attorney, Ronald Wheeler. It is a thirty-three page statement which Randy Wolfe was not placed under oath and which Randy Wolfe did not sign the bottom of the statement itself, but Roger Downs of the DCI would testify that he asked Randy Wolfe about what had happened prior to the shooting just before the shooting and Randy answered they started questioning Kenny

[Teer] things that had been coming up missing and that would be the substance of the stipulation, is that correct? [wording omissions in original]

We believe the stipulation as to Downs's version of the statement was properly admitted to impeach the prior testimony of the witness which was either inconsistent with the witness's trial testimony or else a material fact omitted from the witness's trial testimony. The record sufficiently indicates that the witness either was not certain as to having made the statement or denied making it. This is sufficient foundation for impeachment purposes. *Gilmore*, 259 N.W.2d at 857.

Although perhaps not artfully drawn, the stipulation did contain the substance of Randy's prior version as well as indicia of reliability so that the jury had some guidance as to what weight to give either Randy's prior statements or his trial testimony.

> The theory of attack by prior inconsistent statements is not based on the assumption that the present testimony is false and the former statement true but rather upon the notion that talking one way on the stand and another way previously is blowing hot and cold and raises a doubt as to the truthfulness of both statements. More particularly the prior statement, assuming it is inadmissible as substantive evidence under the hearsay rule, may be used in the context only as an aid in judging the credibility of the testimony with which the previous statement is inconsistent.

E. Cleary's *McCormick's Handbook on Evidence* (Second Ed.), § 34 at 68 (1972) (footnotes omitted). Randy was, of course, available for cross-examination with respect to both his trial testimony and his prior statement, had defendant desired to pursue the matter.

We have considered all of the arguments raised by defendant and find no reason to overturn the trial court's ruling. Her conviction for murder in the second degree is affirmed.

AFFIRMED.

SNELL, J., takes no part.