# IN THE COURT OF APPEALS OF IOWA

No. 18-2197
Filed May 13, 2020

**STATE OF IOWA,**
 Plaintiff-Appellee,

**vs.**

**DERRIS L. SWIFT,**
 Defendant-Appellant.
_____

Appeal from the Iowa District Court for Scott County, Henry W. Latham II, Judge.

A defendant appeals his convictions of intimidation with a dangerous weapon, willful injury resulting in serious injury, possession of marijuana, and attempt to commit murder. **AFFIRMED.**

Martha Lucey, State Appellate Defender, and Vidhya K. Reddy, Assistant Appellate Defender, for appellant.

Derris Swift, Clarinda, self-represented appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

Considered by Tabor, P.J., May, J., and Danilson, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2020).

**DANILSON, Senior Judge.**

Derris Swift appeals his convictions of intimidation with a dangerous weapon, willful injury resulting in serious injury, possession of marijuana, and attempt to commit murder. We find the district court did not abuse its discretion by admitting certain exhibits that were used to impeach the prior inconsistent statements of witnesses. Swift has not shown he received ineffective assistance of counsel due to counsel's failure to (1) raise an objection based on *State v. Turecek*, 456 N.W.2d 219, 225 (Iowa 1990); (2) object on hearsay grounds to evidence used to test a witness's memory; and (3) request a more specific instruction on the use of impeachment evidence. Additionally, the plain-error rule is not recognized in Iowa. We affirm Swift's convictions.

## I. Background Facts & Proceedings

On the morning of January 24, 2018, Swift and his girlfriend, Ashanti Dixon, were driving in Ashanti's white Dodge Durango to Ashanti's apartment on Heatherton Drive in Davenport. Ashanti was living with her mother, Ameshia Dixon, and brother, Eziah Dixon.[1] Eziah's girlfriend, Ityleonia Watson, was also present at the apartment. Swift and Ashanti engaged in a verbal argument outside the apartment.

Eventually, Ashanti went into the apartment through the back door, then went out the front door of the apartment, got into the Durango, and drove away. Swift knocked on the back door of the apartment and asked for the keys to the Durango. After he was informed Ashanti left in the vehicle, he walked away.

---

[1] Because this case involves three members of the Dixon family, we will refer to them by their first names.

Shortly thereafter, as Ashanti was driving on Heatherton Drive toward the Gas Depot, a local convenience store, a person on foot fired shots at the Durango. Ashanti was shot in the arm. She managed to drive herself to the Gas Depot, where she sought assistance. Before emergency personnel arrived, Ashanti called Ameshia to say she had been shot. Ashanti was taken to the hospital, where she had surgery on her arm. She has continuing nerve damage in her arm.

Several witnesses saw the incident. The shooter was described as wearing "jeans, a sweatshirt, cornrows. Because he was running, the cornrows were flying." A different witness described him as "[s]omebody probably about maybe 5'10" to about maybe six-foot, black hoodie—it was up so I didn't get to see a face—blue jeans and a pair of white sneakers." A third witness testified the shooter had on jeans with a white design, and the jeans were "[k]ind of like the same" as those worn by Swift in a photograph. This witness also stated the shooter was wearing a black top. About five minutes after the shooting, one of the witnesses saw a person "with a red hoodie and dreads running through the woods."

Officers arrived at the scene within just a few minutes. They observed a man running through a cornfield behind the apartments. They apprehended the person, Swift, about fourteen minutes after they were dispatched to the scene. Swift was wearing a red top, stone-washed jeans, and dark shoes. His hair was in cornrows, which he had pulled back with a hair tie. Swift had a bag of marijuana in his pocket. Officers believed Swift must have hidden a black top or hoodie, and the gun, during the fourteen minutes between the time the shooting was reported and when they captured him. They searched the public-access areas of the

nearby apartments, the cornfield, and a wooded area with the assistance of a K-9 unit but did not find a black top or a gun.

When officers first talked to Ameshia, she said that when Ashanti called her from the Gas Depot, Ashanti said, "Debo shot me."[2]  Initially, Ashanti told officers she did not know who shot her.  At a formal interview on January 29, while she was accompanied by Ameshia, Ashanti stated, "I don't have no doubt in my mind it was probably Debo," and "I know the guy in front of my car was Derris."

Swift was charged with intimidation with a dangerous weapon, in violation of Iowa Code section 708.6 (2018); willful injury resulting in serious injury, in violation of section 708.4(1); possession of marijuana, in violation of section 124.401(5); and attempt to commit murder, in violation of section 707.11.  A jury trial was scheduled for July 23, 2018.

On July 19, the State filed a motion to continue the trial, stating it appeared some witnesses were avoiding being served with a subpoena and it was not clear if Ashanti would continue to cooperate with the prosecution.  After a hearing, the district court granted the motion.  The trial was rescheduled for October 15.

At the jury trial, Eziah testified Ameshia was angry and sad when Ashanti called to say she was shot.  Watson testified Ameshia had "just a whole bunch of emotions in one," and she was angry, sad, and hurt.  The prosecutor asked Watson about a statement she made to officers on January 24, and defense counsel objected on the ground the State was trying to impeach its own witness.  The court overruled the objection.  Watson testified she did not remember the statements

---

[2] Debo was Swift's nickname.

she made to officers on January 24. The prosecutor asked Watson questions about her prior statements to officers.

Ameshia denied that Ashanti told her that Swift shot her but agreed that there was body cam video of her telling an officer that Ashanti said, "Debo shot me." Defense counsel objected, stating the prosecutor was trying to impeach the State's own witness. The court overruled the objection. Ameshia stated she was distraught at the time and made the assumption the shooter was Swift. On cross-examination, Ameshia testified her statement to the officer was a mistake and she did not know who was responsible for the shooting.

Ashanti testified the shooter wore all black—black shoes, black pants, and black hood. She stated the shooter was not Swift. Ashanti denied ever telling anyone the shooter was Swift. The prosecutor asked Ashanti about a conversation she had with a former boyfriend, Calvin Davis, while Davis was in jail. While discussing Swift with Davis, Ashanti stated, "Had he not shot me, he could have had me," and "Who the f**k tries to kill your girlfriend over some dumb s**t?" Ashanti testified she did not remember her statements to officers or Davis. On cross-examination, Ashanti stated she was pressured by officers to name Swift as the shooter.

Outside the presence of the jury, the State indicated it wanted to introduce Exhibit 85, a body cam video recording taken on January 24 by Officer Jason Pojar. The recording reflects Ameshia's statement that Ashanti told her "Debo shot me." The State wanted to present the video to rebut Ashanti's statement that she never asserted Swift was the shooter and to rebut Ameshia's statement that Ashanti never told her this. Defense counsel objected on the ground it was improper

impeachment and double hearsay. The court overruled the objection, finding the evidence was proper rebuttal of an inconsistent statement. The court also found the evidence was admissible under the excited utterance exception to the hearsay rule.

The prosecutor also proposed to introduce Exhibit 87, a recording of Ashanti's telephone call with Davis. Again, the State wanted to present the recording to rebut Ashanti's statement that she never asserted Swift was the shooter. The State contended the evidence was admissible under Iowa Rule of Evidence 5.613 as extrinsic evidence of a prior inconsistent statement. Defense counsel objected, claiming the State was improperly impeaching its own witness. The court overruled the objection, finding, "[T]he State is offering this exhibit for the appropriate purpose and has cited the appropriate Rules of Evidence to support the same."

Additionally, the State proposed to introduce Exhibit 88, a video of the police interview with Ashanti on January 29. During the interview, Ashanti stated, "I don't have no doubt in my mind it probably was him," and "I know the guy in front of my car was Derris." The State asserted this was extrinsic evidence of a prior inconsistent statement that should be admissible under rule 5.613. Moreover, the State wanted to rebut Ashanti's testimony that she was pressured by officers to name Swift as the shooter. Defense counsel argued the video contained extraneous and irrelevant material and was unduly prejudicial. Defense counsel also stated the prosecutor was improperly trying to impeach the State's witness. The court determined some parts of the video that were more prejudicial than probative would be removed and the remainder could be presented to the jury.

The jury found Swift guilty of the charges against him. The court denied Swift's motions in arrest of judgment and for new trial. Swift was given sentences of ten years, ten years, six months, and twenty-five years, all to be served concurrently. He now appeals.

## II.    Evidentiary Rulings

We review the district court's rulings on evidentiary issues for an abuse of discretion. *Powers v. State*, 911 N.W.2d 774, 780 (Iowa 2018). "An abuse of discretion occurs when a district court exercises its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *State v. Wilson*, 878 N.W.2d 203, 210–11 (Iowa 2016). On issues of hearsay, we review for the correction of errors at law. *State v. Dudley*, 856 N.W.2d 668, 675 (Iowa 2014). We "will reverse the admission of hearsay evidence as prejudicial unless the contrary is shown." *Id.*

**A.    *Turecek* rule violation claim.** Swift claims the State violated the rule in *Turecek*, 456 N.W.2d at 225, by impeaching its own witnesses. In *Turecek*, the Iowa Supreme Court determined the State may impeach its own witnesses by evidence of prior inconsistent statements. 456 N.W.2d at 225. However, the State may not "place a witness on the stand who is expected to give unfavorable testimony and then, in the guise of impeachment, offer evidence which is otherwise inadmissible." *Id.*

During the testimony of Watson and Ameshia, Swift claimed the State was improperly impeaching its own witnesses.[3] He did not claim the State was putting

---

[3] We note a party may impeach its own witness. Iowa R. Evid. 5.607; *State v. Russell*, 893 N.W.2d 307, 314 (Iowa 2017).

these witnesses on the stand primarily to present otherwise inadmissible evidence to the jury, allude to *Turecek*, or claim the State's method of impeachment was improper except one objection that was sustained during Watson's testimony. *See id.* Additionally, he did not raise objections based on *Turecek* to Exhibits 85, 87, or 88. Issues must be raised and considered by the district court in order to be preserved for appellate review. *See Lamasters v. State*, 821 N.W.2d 856, 863–64 (Iowa 2012). We determine Swift has not preserved error on his claim the State violated the rule in *Turecek*.

**B.    Impeachment of Watson**. Swift also claims the State improperly impeached Watson after she testified she did not remember some events on January 24 by introducing hearsay evidence of her prior statements to officers. In essence, the State appears to have recited from a police report containing Watson's prior statements in an effort to impeach Watson. During Watson's testimony, defense counsel objected on the ground the prosecutor was trying to impeach the State's own witness. The district court properly overruled such objections as any party may impeach its own witness. *See* Iowa Rule of Evidence 5.607; *State v. Gilmore*, 259 N.W.2d 846, 852 (Iowa 1997). No objection was made contending the State was attempting to introduce hearsay via recitation of prior statements or in regard to the form or the propriety of the State's questions with two exceptions.

Defense counsel did make one lone objection on the basis of a leading question to Watson and referenced the proper procedure to solicit impeaching testimony, however, the objection was sustained. Defense counsel also made one objection, "calls for hearsay," that was overruled, but the objection did not relate to

this same argument concerning using the police report to recite prior inconsistent statements. We conclude Swift did not preserve error on his "hearsay claims" concerning State's cross-examination of Watson. *See Gilmore*, 259 N.W.2d at 846.

**C.** **Admission of Exhibits 85, 87 and 88.** Swift also asserts the district court abused its discretion by admitting Exhibits 85, 87, and 88. Exhibit 85 was the prior inconsistent statement of Ameshia, the two-minute body cam video. Exhibits 87 and 88 were prior inconsistent statements of Ashanti, the jail phone call and thirty-minute interview, respectively. Swift claims evidence of inconsistent statements by Ashanti and Ameshia was already in the record through their testimony so extrinsic evidence of their inconsistent statements was not necessary to impeach them.[4]

"A prior inconsistent out-of-court statement offered for impeachment purposes falls outside of the definition of hearsay." *State v. Nance,* 533 N.W.2d 557, 561 (Iowa 1995). Rule 5.613 provides for the admission of extrinsic evidence of a prior inconsistent statement.[5] In *State v. Wolfe*, 316 N.W.2d 420, 422 (Iowa Ct. App. 1981), we stated that once a proper foundation had been laid for impeachment evidence and a witness was alerted to the prior inconsistent statement, if the witness "admits making the prior inconsistent statement, then that prior statement is not admissible." *See also State v. Oshinbanjo*, 361 N.W.2d 318,

---

[4] On appeal, Swift has not contended the evidence was cumulative.

[5] Rule 5.613 provides, "Extrinsic evidence of a witness's prior inconsistent statement is admissible only if the witness is given an opportunity to explain or deny the statement and an adverse party is given an opportunity to examine the witness about it, or if justice so requires."

322 (Iowa Ct. App. 1984). The ruling in *Wolfe* was discussed in *State v. Ware*, 338 N.W.2d 707, 712 (Iowa 1983), and the Iowa Supreme Court determined the sounder approach would be to allow the jury to see and hear exactly what a witness had previously stated. The court found this approach "provides to the witness and opposing counsel full opportunity to explain the inconsistency in previous out-of-court statements while allowing the finder of fact to have the exact words of the prior statement for purposes of comparison with in-court inconsistent testimony." *Ware*, 338 N.W.2d at 712. Additionally, if the witness "denies making the prior statement, or is evasive in his answer, or cannot remember making it at all, then the statement may be admitted into evidence for purposes of impeachment." *Wolfe*, 316 N.W.2d at 422.

Here, Ashanti and Ameshia testified they could not remember their prior inconsistent statements. Ameshia acknowledged that she had viewed the body cam video, Exhibit 85. She also acknowledged the video depicts her telling law enforcement officers, that Ashanti informed her during the phone call after the shooting, "Debo shot me!" During Ameshia's cross-examination, she was asked if she "heard from Ashanti specifically that she said Derris Swift had shot her or Debo had shot her?" Ameshia's response was, "No, I had not." During redirect examination, Ameshia stated Ashanti "may have not said that." Ameshia tried to explain the inconsistency on her condition of being very distraught and perhaps her assuming Debo shot Ashanti.

Ashanti testified she never identified Swift as the shooter, which was contradicted by her prior statement in the body cam video, Exhibit 88. She testified that she never told her mother who shot her in the phone call right after the

shooting. She acknowledged the phone call to Calvin Davis, Exhibit 87. Yet when asked about her statement to Davis that if Swift had not shot her "he could have had me," she stated, "[T[hey may have me saying that, but I don't recall saying that." Furthermore, Ashanti stated on cross-examination that Swift was not the shooter.

Exhibits 85 and 88 were the subject of a proceeding outside the presence of the jury. After hearing the arguments of counsel, the court concluded Exhibit 85 may be admitted as proper impeachment evidence and was admissible notwithstanding the double hearsay as both Ashanti and Ameshia were distraught at the time of their statements and both statements fell within the excited utterance exception to the hearsay rule. *See* Iowa R. Evid. 5.803(2) ("A statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused.").

In determining whether the excited utterance applies, the court considers "(1) the time lapse between the event and the statement, (2) the extent to which questioning elicited the statements that otherwise would not have been volunteered, (3) the age and condition of the declarant, (4) the characteristics of the event being described, and (5) the subject matter of the statement." *State v. Atwood,* 602 N.W.2d 775, 782 (Iowa 1999). "We review hearsay rulings for correction of errors at law and will reverse the admission of hearsay evidence as prejudicial unless the contrary is shown." *Dudley,* 856 N.W.2d at 675 (citing *State v. Elliott,* 806 N.W.2d 660, 667 (Iowa 2011)).

Here, during the body cam video, Exhibit 85, Ameshia states her daughter was crying and hysterical, and Ashanti admitted in her testimony she was a little

distraught. During Ameshia's testimony she stated at the time of her discussions with law enforcement officers, depicted in Exhibit 85, she was very distraught. This conversation was shortly after the shooting.

Moreover, her statement that Ashanti told her Debo shot her was volunteered and not in direct response to any question asked by the officers. Considering these factors and the facts before the trial court, we are unable to conclude the trial court erred at law in admitting Exhibit 85. The district court properly permitted the jury to see and hear Ashanti and Ameshia's exact statements to compare to their testimony in court. *Ware*, 338 N.W.2d at 712.

As to Exhibit 88, the video of Ashanti's formal interview with Detective Robinson on January 29, Swift also claims the video contains too much extraneous information. He objected on the basis "most of the video is unnecessary and irrelevant." The State asserted that it wanted to show the video in order to rebut Ashanti's testimony she was pressured by officers to name Swift as the shooter. The jurors were able to observe the officers' conduct towards Ashanti over the course of the interview. The court ordered the parties to remove those parts of the video it determined was unduly prejudicial. Although we agree some further deletions could have removed additional extraneous portions of the video, it would have only served to expedite the trial and was not unduly prejudicial to Swift.[6] We conclude the court did not abuse its discretion in overruling Swift's objections to Exhibits 87 and 88.

---

[6] For example, there was some discussion regarding the trajectory of the gunshots and the interviewing officer described the incident as "very serious."

### III.     Ineffective Assistance of Counsel

We conduct a de novo review of claims of ineffective assistance of counsel. *State v. Maxwell*, 743 N.W.2d 185, 195 (Iowa 2008). To establish a claim of ineffective assistance of counsel, a defendant must prove: (1) counsel failed to perform an essential duty and (2) prejudice resulted. *Id.* A defendant's failure to prove either element by a preponderance of the evidence is fatal to a claim of ineffective assistance. *See State v. Polly*, 657 N.W.2d 462, 465 (Iowa 2003).

**A.     Claim of *Turecek* rule violation**. Swift asserts that if he failed to preserve error on any of his claims of improper impeachment, this was due to ineffective assistance of counsel.[7] We turn then to the issue of whether Swift received ineffective assistance because defense counsel did not raise an objection based on *Turecek* regarding the State's impeachment of Ashanti, Ameshia, and Watson.

"The *Turecek* rule is a shield designed to prevent the introduction of otherwise inadmissible evidence, but it cannot be used to prevent the State from using admissible evidence to impeach a witness." *Russell*, 893 N.W.2d at 316. "Prior statements of a witness that are admissible as substantive evidence may be freely employed to impeach a witness on direct examination." *Id.* Thus, "[w]hen a witness's hearsay statement is admissible to prove the truth of the matter asserted,

---

[7] Recent legislation, codified at Iowa Code section 814.7 (2020), provides that claims of ineffective assistance of counsel should be decided in postconviction-relief proceedings rather than on direct appeal from the criminal proceedings. The Iowa Supreme Court has determined this provision is not retroactive and does not apply to proceedings prior to July 1, 2019. *State v. Macke*, 933 N.W.2d 226, 231 (Iowa 2019). In this case, the Iowa Supreme Court issued an order stating the recent amendment to section 814.7 did not apply.

there is no *Turecek* violation." *State v. Tompkins*, 859 N.W.2d 631, 639 (Iowa 2015).

We find the State did not call Ashanti, Ameshia, or Watson for the purpose of impeaching them with evidence that would be otherwise inadmissible. Each witness gave relevant and admissible evidence as to the events surrounding the shooting. *See State v. Kone*, 557 N.W.2d 97, 101 (Iowa Ct. App. 1996). Furthermore, the evidence by which the State sought to impeach them was the type of evidence that was independently admissible, as it was relevant to the issues in the case. *See State v. Belken*, 633 N.W.2d 786, 794 (Iowa 2001). For Ashanti and Ameshia, the impeaching evidence concerned their previous statements that implicated Swift. We acknowledge the State had some uncertainty whether Ashanti and Ameshia were going to appear for the trial and be cooperative witnesses. Nonetheless, they did appear and gave substantive evidence related to what occurred before the shooting. Ashanti also gave details concerning how the shooting occurred and what happened afterwards to the extent of her memory. In respect to Ashanti and Ameshia, we conclude the State did not violate the rule in *Turecek* by "place[ing] a witness on the stand who is expected to give unfavorable testimony and then, in the guise of impeachment, offer evidence which is otherwise inadmissible." *See* 456 N.W.2d at 225.

For Watson, the impeaching evidence concerned the events at Ameshia's apartment shortly before the shooting. Even if we would conclude that the State violated the rule in *Turecek*, by calling Watson, the error in permitting her to testify was harmless. Her testimony only served to corroborate the testimony of other witnesses concerning what occurred at the apartment.

Swift has not shown he received ineffective assistance on the ground defense counsel failed to object to the testimony of witnesses based on the rule in *Turecek*, as such a motion would have been unsuccessful. Defense counsel has no duty to pursue a meritless issue. *State v. Carroll*, 767 N.W.2d 638, 645 (Iowa 2009).

**B.    Propriety of questions to Watson**.  We also determine Swift did not preserve error on his claim regarding Watson's testimony.  During the trial, Watson was asked about events on January 24 before the shooting.  She testified she did not remember talking to officers and did not remember much about that morning.  We now consider whether Swift received ineffective assistance because defense counsel did not make a hearsay or proper objection to the prosecutor's questions asking Watson if she remembered making statements to officers.

Because Watson testified she did not remember the underlying facts, "the only subject to be impeached is the witness's memory or ability to recollect." *See Russell*, 893 N.W.2d at 317.  The prosecutor could ask Watson if she made prior statements to jog her memory. *See id.*  We acknowledge the prosecutor was not free to read a transcript of Watson's prior statements or read her purported inconsistent statements from a police report. *See id.*  Notwithstanding, the prosecutor's questions were not evidence, and the jury was so instructed.  Swift does not point to anything in the record to suggest the jury did not follow the jury instructions.  The use of Watson's prior statements to test her memory did not constitute hearsay. *See Brooks v. Holtz*, 661 N.W.2d 526, 530–31 (Iowa 2003); *Nance*, 533 N.W.2d at 561.

We thus conclude Swift has not shown he received ineffective assistance because defense counsel failed to make a hearsay or proper objection to the prosecutor's questions about Watson's prior statements. If a hearsay objection had been made, it would have been unsuccessful. Defense counsel was not obligated to make a meritless objection. *See Carroll*, 767 N.W.2d at 645.

Moreover, the failure to object to the prosecutor's form of questions by reciting from a police report or transcript did not result in prejudice sufficient to support a claim of ineffective assistance of counsel. *See Dempsey v. State*, 860 N.W.2d 860, 868 (Iowa 2015) (finding prejudice exists where a claimant proves "a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different" (citations omitted)). Upon a review of the record as a whole, Watson's testimony only served to corroborate other evidence. Our supreme court has held "where substantially the same evidence is in the record, erroneously admitted evidence will not be considered prejudicial." *Gilmore*, 259 N.W.2d at 858. In sum, the State's questions, constituting improper impeachment, only elicited evidence that was substantially the same evidence in the record and was not prejudicial. Accordingly, counsel was not ineffective for failing to object to any improper impeachment of Watson.

**C.** **Limiting instruction**. Swift contends he received ineffective assistance because defense counsel did not request a more specific limiting instruction concerning impeachment evidence. The jury was instructed:

> You have heard evidence claiming Ashanti Dixon, Ameshia Dixon, and Eziah Dixon made statements before this trial while not under oath which were inconsistent with what the witnesses said in this trial.

Because the witness did not make the earlier statements under oath, you may use them only to help you decide if you believe the witnesses.

Decide if the earlier statements were made and whether they were inconsistent with testimony given at trial. You may disregard all or any part of the testimony if you find the statements were made and they were inconsistent with the testimony given at trial, but you are not required to do so.

Do not disregard the testimony if other evidence you believe supports it, or if you believe it for any other reason.

The instruction follows Iowa Criminal Jury Instruction No. 200.42. Swift asserts defense counsel should have requested the insertion of the following language, "Any prior inconsistent statements made by a witness can be considered only to evaluate the credibility of the witness. The prior statements cannot be treated as evidence of the truth of the matter asserted in the statement, or as themselves substantive evidence supporting the elements of the offense."

"An impeachment instruction regarding prior inconsistent statements is warranted if a witness has made such statements prior to trial." *State v. Hardin*, 569 N.W.2d 517, 521 (Iowa Ct. App. 1997). We have previously approved of the use of Instruction No. 200.42, noting "[w]e are reluctant to disapprove those uniform instructions." *Moon v. State*, No. 05-0816, 2007 WL 1345732, at *8 (Iowa Ct. App. May 9, 2007). Furthermore, the instruction stated, "you may use [the prior inconsistent statements] *only* to help you decide if you believe the witnesses." (Emphasis added.) Thus, the instruction given contains the gist of Swift's requested language—that "prior inconsistent statements made by a witness can be considered only to evaluate the credibility of the witness."

We conclude Swift has not shown he received ineffective assistance based on defense counsel's failure to request additional language in the instruction concerning impeachment evidence.

## IV.     Plain Error

Finally, Swift asserts his convictions should be overturned under the plain-error rule.  He claims "the improper admission of the challenged evidence and the improper jury instruction on impeachment were errors, plain on their face, and affected defendant's substantial rights in that they affected the outcome of the trial proceeding below."

The plain-error rule is not recognized in Iowa.  *See State v. Martin*, 877 N.W.2d 859, 866 (Iowa 2016); *State v. Rutledge*, 600 N.W.2d 324, 325 (Iowa 1999).  Therefore, we do not consider his claims based on the plain-error rule.

We have also reviewed Swift's pro se reply brief and conclude there is no merit to any of his claims.

We affirm Swift's convictions.

**AFFIRMED.**