# IN THE COURT OF APPEALS OF IOWA

No. 19-1273
Filed October 7, 2020

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**LUKE VAN HEMERT,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Mahaska County, Lucy J. Gamon,

Judge.

Luke Van Hemert appeals his conviction for second-degree murder.

**AFFIRMED**.

Matthew G. Sease of Sease & Wadding, Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney

General, for appellee.

Considered by Vaitheswaran, P.J., and Tabor and Schumacher, JJ.

**SCHUMACHER, Judge.**

A Mahaska County jury found Luke Van Hemert guilty of murder in the second degree. On appeal, Van Hemert asserts the trial court erred in denying his request for immunity pursuant to Iowa's stand-your-ground law contained in Iowa Code section 704.13 (2018); his counsel was ineffective for failing to object to a malice aforethought inference jury instruction; the evidence is insufficient to support the jury's finding that he lacked justification and acted with malice aforethought; the jury's verdict is contrary to the weight of the evidence; and the trial court erred in excluding certain impeachment evidence. We affirm the conviction.

## I.    Background

On the evening of March 1, 2018, around 10:30 p.m., Mikeal Donaldson, a student and basketball player at William Penn University in Oskaloosa, Iowa, was driving unaccompanied from his friend Marquis Todd's dorm to the Jiffy Mart, a nearby gas station, to purchase snacks. His route to the Jiffy Mart would take him past the Van Hemert residence, where Van Hemert was pulling his Jeep into the driveway. Elijah Marcus and Jeff Beard were inside Van Hemert's Jeep. Donaldson attempted to pass Van Hemert and, in doing so, sideswiped the Van Hemert vehicle.[1] None of the parties involved knew each other before the accident, which occurred just outside the house where Van Hemert had been living with his father, Stanley Van Hemert (hereinafter "Stanley"). Donaldson was not aware that Van Hemert lived at the residence.

---

[1] Donaldson testified that Van Hemert's vehicle was driving less than ten miles per hour, cut him off, and sped up when he attempted to go around the vehicle.

After the vehicles made contact, both cars stopped in the street. Van Hemert and Marcus exited the vehicle, with Van Hemert shouting at Donaldson. Marcus slammed his hands down on the hood of Donaldson's car. Donaldson remained in his vehicle and reversed his vehicle back up the street to a parallel road where he waited for several minutes.

Meanwhile, Van Hemert and Marcus went into the house and awoke Stanley to alert him as to what had transpired. Van Hemert, Marcus, and Stanley returned to the front yard. After a short while, Donaldson proceeded back down the road towards the Jiffy Mart. As he neared the Van Hemert residence, Van Hemert threw a brick at Donaldson's vehicle, smashing the windshield. Marcus hit the vehicle with a tree branch, also damaging the windshield.

Donaldson continued driving and returned to Todd's dorm at William Penn. Donaldson informed Todd and their mutual friend, D'Angelo Allen, what had transpired. All three got into Donaldson's car, and Donaldson drove them back to the scene of the accident.[2]

At the Van Hemert residence, Marcus moved the Jeep from the street into the driveway. Stanley, concerned that the police would soon be involved, instructed Van Hemert and Beard to clear the house of drug paraphernalia. While in the home, Van Hemert remarked, "We have to ready up," and after Stanley discussed calling the police, Van Hemert replied, "Don't worry about it. We'll handle it." Beard and Van Hemert headed to the rear of the Van Hemert property and began walking to Beard's home.

---

[2] Testimony at trial established that Todd was 6'9", Allen was 6'8", and Donaldson was 6'6".

Donaldson, Todd, and Allen returned to the Van Hemert property. Stanley and Marcus were outside assessing the damage to the Jeep in the driveway. Van Hemert was out of sight along the opposite side of the house. Donaldson, Todd, and Allen exited Donaldson's vehicle and approached Stanley and Marcus near the driveway.

A short verbal confrontation ensued. Stanley stated if Donaldson, Todd, and Allen did not leave the property, he was going to release his pit bull and he was calling the police. With his phone in hand, Stanley began walking towards the front door of his house. Todd followed Stanley toward the house.

Van Hemert charged Todd from around the side of the house. Todd and Van Hemert engaged in a physical altercation for a short time. During the altercation, Van Hemert stabbed Todd three times with a knife he had been carrying.

After the stabbing, the altercation between Van Hemert and Todd ended abruptly. Todd shouted to his friends that he thought he had been tased. Donaldson and Allen helped Todd into the back seat of Donaldson's car, and Donaldson drove to the Jiffy Mart. Around the same time, Stanley was on the phone with 911 operators and reported that a fight had occurred and an ambulance was needed because someone was hurt.

Police were already at the Jiffy Mart when Donaldson, Todd, and Allen arrived. Todd was taken to the hospital where he died from his injuries. Autopsy results revealed Todd suffered stab wounds to his left shoulder, left arm, and chest. The cause of death was a stab wound to the chest, which punctured his heart.

Immediately after Donaldson, Todd, and Allen left the Van Hemert property, Van Hemert discarded the knife used to stab Todd. Police arrived and spoke with Van Hemert. He described the events of the night but did not mention he had thrown a brick at Donaldson's windshield or that he had stabbed Todd.

Later that evening, Van Hemert was interviewed at the Oskaloosa Police Department. By the time of the interview, law enforcement was aware Todd had died from what appeared to be stab wounds. Van Hemert was not forthcoming about his actions during the interview. He again described the events of the night and again neglected to mention throwing a brick at Donaldson's windshield or stabbing Todd. He was asked numerous times whether any knives or weapons were used in the fight and was explicitly asked multiple times if he had stabbed anyone. Van Hemert denied any knowledge of knives and continued to assert that he had not stabbed anyone.

Van Hemert was charged with second-degree murder in violation of Iowa Code sections 707.1, 707.3(1), and 707.3(2). Trial began on April 9, 2019. On April 15, 2019, the jury found Van Hemert guilty as charged.

## II.     Analysis

### A.     Immunity

Van Hemert argues the trial court erred in denying his motion to enforce immunity under Iowa Code section 704.13 and, for the first time on appeal, argues he was entitled to a post-trial immunity determination. We review rulings on questions of statutory interpretation for correction of errors at law. *State v. Coleman*, 907 N.W.2d 124, 134 (Iowa 2018).

Before trial, Van Hemert filed a motion to enforce immunity pursuant to Iowa Code section 704.13, Iowa's recently enacted stand-your-ground law, which provides:

> A person who is justified in using reasonable force against an aggressor in defense of oneself, another person, or property pursuant to section 704.4 is immune from criminal or civil liability for all damages incurred by the aggressor pursuant to the application of reasonable force.

After hearing, the trial court denied the motion. In ruling, the court stated, "Iowa Code Chapter 704, as amended, does not provide a defendant with the possibility of immunity from prosecution, and does not entitle this defendant to a pretrial evidentiary hearing on said issue." At the time of the hearing, the Iowa Supreme Court had not yet interpreted section 704.13.

Subsequent to Van Hemert's trial, the supreme court decided *State v. Wilson*, 941 N.W.2d 579 (Iowa 2020). In *Wilson*, the court interpreted section 704.13 and found that the "legislation does not require pretrial hearings." 941 N.W.2d at 581. "Significantly, section 704.13 provides an immunity from 'liability,' not an immunity from 'prosecution' as in some other states with stand-your-ground laws." *Id.* The court held Wilson, "had no right to a pretrial hearing on justification." *Id.* at 590. We consequently hold that the trial court was correct in denying Van Hemert's motion to enforce immunity. Based on recent directive from the supreme court set out in *Wilson*, we find no error in the trial court's denial of Van Hemert's motion to enforce immunity under Iowa Code section 704.13.

On appeal, Van Hemert, for the first time, also argues he was entitled to a post-trial immunity determination. Van Hemert never requested a post-trial immunity hearing in the district court. Thus, the claim is unpreserved on direct

appeal. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." (citing *Metz v. Amoco Oil Co.*, 581 N.W.2d 597, 600 (Iowa 1998))).

### B.    Ineffective Assistance of Counsel

Van Hemert asserts his trial counsel was ineffective for failing to object to a jury instruction, which stated malice aforethought may be inferred from the defendant's use of a dangerous weapon.

A 2019 amendment to Iowa Code section 814.7 eliminates the ability of a criminal defendant to pursue an ineffective-assistance-of-counsel claim on direct appeal:

> An ineffective assistance of counsel claim in a criminal case shall be determined by filing an application for postconviction relief pursuant to chapter 822.  The claim need not be raised on direct appeal from the criminal proceedings in order to preserve the claim for postconviction relief purposes, and the claim shall not be decided on direct appeal from the criminal proceedings.

The legislation became effective on July 1, 2019.  Van Hemert's judgment of conviction and sentence was entered on July 26, 2019; his notice of appeal was filed on July 31, 2019.  We therefore lack the authority to consider his ineffective-assistance-of-counsel claim on direct appeal.  *State v. Damme*, 944 N.W.2d 98, 109 (Iowa 2020) (citing *State v. Macke*, 922 N.W.2d 226, 228 (Iowa 2019)).

### C.    Sufficiency of the Evidence

At the close of the State's case, Van Hemert moved for a motion of acquittal asserting the State had not offered sufficient evidence to show that: (1) he had not acted with justification and (2) he acted with malice aforethought.  The court denied

the motion. The claimed errors were preserved, and Van Hemert renews them on appeal.

"Sufficiency of evidence claims are reviewed for a correction of errors at law." *State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012). A jury verdict is binding upon this court and will be upheld unless it is not supported by substantial evidence. *State v. Tipton*, 897 N.W.2d 653, 692 (Iowa 2017). Substantial evidence is evidence that would convince a rational trier of fact that the defendant is guilty beyond a reasonable doubt. *Id.* If evidence raises only suspicion, speculation, or conjecture, it is not substantial. *State v. Howse*, 875 N.W.2d 684, 688 (Iowa 2016). We consider all evidence in the record, not just the evidence supporting guilt. *Tipton*, 897 N.W.2d at 692. We view all relevant evidence in the light most favorable to the State. *Id.*

To convict Van Hemert of second-degree murder, the State had the burden of proving beyond a reasonable doubt the following four elements:

> 1. On or about the 1st day of March, 2018, Luke Van Hemert stabbed Marquis Todd.
> 2. Marquis Todd died as a result of being stabbed by the defendant.
> 3. Luke Van Hemert acted with malice aforethought.
> 4. Luke Van Hemert's acts were not justified.

Instruction No. 18.

In order to prove lack of justification, the State was required to prove one of the following alternatives:

> 1. The defendant started or continued the incident which resulted in injury or death.
> 2. The defendant provoked the use of force against himself with the intent to use such force as an excuse to inflict injury on another person.

3. The defendant did not believe he was in imminent danger of death or injury and the use of was not necessary to save him.

4. The defendant did not have reasonable grounds for the belief.

5. The force used by the defendant was unreasonable.

### 1. Lack of Justification

Van Hemert argues there is insufficient evidence for a jury to find he lacked justification through any of the enumerated alternatives. However, evidence presented at trial was sufficient for a rational jury to conclude that at least one of the alternatives was satisfied.

Van Hemert threw a brick through Donaldson's windshield, which escalated the initial car accident and led to Todd accompanying Donaldson back to the Van Hemert property. As Todd followed Stanley to the front door, Van Hemert came from around the house, ran at Todd, initiating their physical altercation. Van Hemert used a knife in the fight while Donaldson was unarmed, disposed of the knife immediately after the fight, and then denied stabbing Todd multiple times to police.

At trial, Van Hemert testified he was "scared for his life" and that Todd was on top of him at the time of the stabbing. Van Hemert further testified he was face down when he stabbed Todd by using his right arm in a backward motion to inflict the injuries. However, the jury also heard from Donaldson and Allen, as well as law enforcement and the medical examiner, among others. In his interview with police hours after the stabbing, Van Hemert stated that Todd "hit me one time" while on the ground, that "I didn't get hurt at all," and that "Uh, I don't think so" as to whether anyone came after his father.

The jury can believe some of a witness's story while rejecting other parts.

> [T]he jury is at liberty to believe or disbelieve the testimony of witnesses as it chooses and give such weight to the evidence as in its judgment the evidence was entitled to receive. The very function of the jury is to sort out the evidence presented and place credibility where it belongs.

*State v. Blair*, 347 N.W.2d 416, 420 (Iowa 1984) (citations omitted). Likewise, the jury is free to credit portions of both sides' evidence and conclude the real story is somewhere in the middle. *See, e.g.*, *State v. Dudley*, 856 N.W.2d 668, 677 (Iowa 2014) ("In our system of justice, it is the jury's function to determine the credibility of a witness.").

A rational jury could consider this evidence and find one of the alternatives was satisfied. *See State v. Shanahan*, 712 N.W.2d 121, 138 (Iowa 2006) ("When a person is required to use deadly force to protect himself or herself, normally the first course of action is for that person to notify the authorities and report the incident. We believe [defendant's] failure to contact the authorities after the incident . . . is inconsistent with a person's claim of self-defense."); *State v. Thornton*, 498 N.W.2d 670, 673–74 (Iowa 1993) (explaining that where the defendant "left the scene immediately after the shooting," and "[w]ent home and hid his gun in the basement," a "jury could rationally believe these were not the actions of someone who honestly believed he acted in self-defense").

Viewing the evidence in the light most favorable to State, substantial evidence supports the jury's finding that Van Hemert was not justified in his actions. It is the jury's role, not ours, to resolve any inconsistencies. *See State v. Mitchell*, 568 N.W.2d 493, 504 (Iowa 1997); *State v. Knox*, 536 N.W.2d 735, 743 (Iowa 1995). As our highest court has stated, "[t]he very function of the jury is to

sort out the evidence presented and place credibility where it belongs." *Blair*, 347 N.W.2d at 420. We decline to second-guess the jury on these credibility issues.

### 2. *Malice Aforethought*

Van Hemert also argues that there is insufficient evidence for a jury to find he acted with malice aforethought. The jury was instructed as to the malice aforethought element as follows:

> Concerning element number 3 of Instruction Number 18, "malice" is a state of mind which leads one to intentionally do a wrongful act to the injury of another out of actual hatred, or with an evil or unlawful purpose. It may be established by evidence of actual hatred, or by proof of a deliberate or fixed intent to do injury. It may be found from acts and conduct of the defendant, and the means used in doing the wrongful and injurious act. Malice requires only such deliberation that would make a person appreciate and understand the nature of the act and its consequences, as distinguished from an act done in the heat of passion.
> "Malice aforethought" is a fixed purpose or design to do some physical harm to another which exists before the act is committed. It does not have to exist for any particular length of time.

Additionally, the jury was instructed: "Malice aforethought may be inferred from the defendant's use of a dangerous weapon."

Van Hemert asserts that given the evidence presented at trial, there is insufficient evidence for the jury to find malice aforethought; therefore, the jury's finding must have been based on an inference of malice from the use of a dangerous weapon that Van Hemert argues was impermissible because his actions were justified. Specifically, Van Hemert states:

> After reviewing the evidence as a whole, it is clear that the only evidence to support a finding of malice aforethought appears to be the improper inference that because a dangerous weapon was used malice may be inferred. However, it is improper to infer malice in situations of justification or legal excuse.

It was for the jury to determine whether Van Hemert was justified, and if they found he was not, they may infer malice aforethought from his use of a dangerous weapon.

> [I]t is often impossible for a jury to determine a defendant's state of mind without the aid of inference. By instructing the jury that it may infer malice from the use of a dangerous weapon, courts present the jury with a straightforward example of how the State might prove the defendant's culpable state of mind. The inference, which the jury is permitted but never required to make, exists because a rational juror could infer that one who uses a dangerous weapon intends to cause physical harm, and even to kill.

*State v. Green*, 896 N.W.2d 770, 780 (citations omitted). Where a jury finds the defendant's use of a dangerous weapon is justified, an inference of malice would be inappropriate "because the defendant's state of mind was not malicious, but instead was justified or excused." *Id.* However, if the jury rejects the defendant's justification argument, it may infer he acted with malice aforethought from his use of a dangerous weapon. *Id.* As we believe there was sufficient evidence for a rational jury to find Van Hemert was not justified, the inference was not foreclosed and it was permissible for the jury to infer from his use of a dangerous weapon that Van Hemert acted with malice aforethought.

Additional evidence was presented to support a finding of malice aforethought. Van Hemert threw a brick at Donaldson's car. One of the State's witnesses testified he heard Van Hemert yell a racial slur after the car accident and threatened to kill Donalson if he returned. Evidence was presented that after throwing the brick and before the fatal fight, Van Hemert stated, "We have to ready up," and when considering whether to call the police, "Don't worry about it. We'll handle it." Van Hemert charged Todd and then initiated the physical altercation.

Van Hemert disposed of the knife used to stab Todd three separate times and was not forthcoming about his actions during his interview with police later that night. We find the record, when viewed in the light most favorable to the State, contained substantial evidence for a rational jury to conclude Van Hemert acted with malice aforethought.

### D.      Weight of the Evidence

Van Hemert argues that the trial court erred in denying his motion for a new trial. Iowa Rule of Criminal Procedure 2.24(2)(b)(6) permits a trial court to grant a new trial "[w]hen the verdict is contrary to law or evidence." The supreme court has held that this rule means "contrary to the weight of the evidence." *State v. Ellis*, 578 N.W.2d 655, 659 (Iowa 1998). "On a weight-of-the-evidence claim, appellate review is limited to a review of the exercise of discretion by the trial court." *State v. Reeves*, 670 N.W.2d 199, 203 (Iowa 2003). We, therefore, review a district court's ruling as to motions for new trial and in arrest of judgment for abuse of discretion. *Id.* at 202. "A verdict is contrary to the weight of the evidence where 'a greater amount of credible evidence supports one side of an issue or cause than the other.'" *Shanahan*, 712 N.W.2d at 135 (quoting *Ellis*, 578 N.W.2d at 658).

This assessment "is broader than the sufficiency-of-the-evidence standard in that it permits the court to consider the credibility of witnesses." *State v. Ary*, 877 N.W.2d 686, 706 (Iowa 2016). At the same time, however, "it is also more stringent than the sufficiency-of-the-evidence standard in that it allows the court to grant a motion for a new trial only if more evidence supports the alternative verdict as opposed to the verdict rendered." *Id.* The grant of a new trial on weight-of-the-evidence grounds is appropriate "only in the extraordinary case in which the

evidence preponderates heavily against the verdict rendered." *Id.* Upon our review, we are unable to conclude the court denied the motion for a new trial based on untenable grounds or to an extent clearly unreasonable. Finding no abuse of discretion, we affirm the denial of the motion for a new trial.

### E.    Exclusion of Impeachment Evidence

Van Hemert argues that the trial court abused its discretion when it excluded evidence offered to impeach witness Donaldson.

We review a trial court's decision on the exclusion of evidence for abuse of discretion. *State v. Smith*, 522 N.W.2d 591, 593 (Iowa 1994). "An abuse of discretion will be found when the court exercises its discretion on grounds clearly untenable or to an extent clearly unreasonable." *Id.* (citing *State v. Martin*, 385 N.W.2d 549, 552 (Iowa 1986)). "'[W]e grant the district court wide latitude regarding admissibility' and will reverse only where the losing party was prejudiced by an unreasonable decision." *Kurth v. Iowa Dep't of Transp.*, 628 N.W.2d 1, 5 (Iowa 2001) (quoting *State v. Sallis*, 574 N.W.2d 15, 16 (Iowa 1998)).

At trial, the following line of questioning occurred between Donaldson and defense counsel on cross-examination:

> Q. Okay. And from the location at 603 North Third as you're going all the way up to the Jiffy where you stopped, you didn't dump any weapons in between there, did you? A. No, Sir.
> Q. And once you were at the Jiffy station, you didn't ditch anything? A. No, sir.
> Q. Now, Mr. Donaldson, after you started talking to the police, at one point they informed you that they were going to have to confiscate your phone; correct? A. Yes, sir.
> Q. You're aware—well, before I ask that, after the incident but before they confiscated your phone, you had several friends contacting you that were concerned about you and your friends; isn't that true? A. Yes, sir.

Q. Do you have somebody in your contacts list that was labeled Morgan?  A. Morgan, yes, sir.

Defense counsel then stated that he would "like to request an offer of proof be made with respect to what I intend to do."

In chambers, defense counsel explained that he wished to offer a text message written by Donaldson in reply to a contact named "Morgan."  Morgan had asked whether Donaldson was in any trouble with the police, to which Donaldson replied, "had weed on m[e] but put it in the gas station."  Counsel went on to explain that he would offer the message "for purposes of impeachment, not as an exhibit," and that he would "refresh Mr. Donaldson's recollection as to what he would have texted his friend a few hours after [the stabbing] occurred and ask him about that."

The trial court denied defense counsel's request stating:

I am not going to allow defense counsel, to interrogate this witness about ditching marijuana.  Under Iowa Rule of Evidence 5.608, I believe I could on cross-examination allow this witness to be questioned about ditching marijuana and whether he may have lied about that, but the issue of marijuana is totally extraneous to the issues in this case.  It is really almost an extrinsic incident.  I don't think it adds anything.  It just tends to make the witness, look bad for having marijuana and for having lied about gotten rid of it.  I think it is within my discretion.  I think it is more prejudicial than probative.  I will not allow it.

On appeal, Van Hemert raises arguments similar to those heard by the trial judge.  Van Hemert argues that defense counsel's intended questioning concerning whether he told Morgan he ditched marijuana at the Jiffy Mart was proper under Iowa Rule of Evidence 5.608(b) as inquiry into a specific instance of the witness's conduct.

Rule 5.608(b) provides that a court may allow, on cross-examination, impeachment of a witness through inquiry into specific instances of a witness's

conduct if they are probative of the witness's character for truthfulness.  However, counsel is said to be bound by the witness's response; extrinsic evidence is not admissible to prove the specific instances of the witness's conduct.  Iowa R. Evid. 5.608(b); *State v. Greene*, 592 N.W.2d 24, 28 (Iowa 1999).

Here the witness had already been asked about a specific instance of his conduct: whether he ditched anything at the Jiffy Mart.  The witness replied that he had not.  The specific instance of conduct inquired about is not probative of the witness's character for truthfulness or untruthfulness.  The underlying act of ditching marijuana does not involve dishonesty or false statement.  Introduction of additional evidence concerning the witness's specific instance of conduct would amount to extrinsic evidence, which is not be permitted under 5.608.[3]  Iowa R. Evid. 5.608(b); *Greene,* 592 N.W.2d at 28.

Van Hemert argues that the proposed evidence was not offered to prove whether Donaldson had ditched marijuana but to undermine his credibility as a witness by contradicting his prior testimony.  Although Van Hemert does not characterize it as such, this theory of impeachment falls outside the narrow scope of rule 5.608; however, it may be fairly considered under rule 5.613, which permits impeachment through a witness's prior inconsistent statement.  Under rule 5.613,

---

[3] We note that Van Hemert argues introduction of the text message would have been to refresh the witness's recollection.  However, "a witness should not be allowed to see or use a memorandum, as a present memory refresher, unless and until it appears he is unable to testify without it." *U.S. Homes, Inc. v. Yates*, 174 N.W.2d 402, 405 (Iowa 1970) (citing *Williams v. Stroh Plumbing & Elec., Inc.*, 94 N.W.2d 750, 754 (Iowa 1959)).  Donaldson never indicated that he was unable to remember whether he ditched anything at the Jiffy Mart.  In fact, he stated that he did not.  Therefore, the text message could not be used to refresh the witness's recollection.

if after proper foundation and being given an opportunity to explain or deny the statement, the witness denies or fails to remember making the prior statement, extrinsic evidence of the statement is admissible for impeachment purposes. *State v. Berry*, 549 N.W.2d 316, 318−19 (Iowa Ct. App. 1996).

However, "matters upon which impeachment is attempted must be relevant to some issue in the case." *State v. Wolfe*, 316 N.W.2d 420, 422 (Iowa Ct. App. 1981). Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and [t]he fact is of consequence in determining the action." Iowa R. Evid. 5.401. Additionally, a trial court judge has the discretion to exclude otherwise relevant evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Iowa R. Civ. P. 5.403. "A determination of the probative value of relevant evidence focuses on the strength and force of the tendency of the evidence 'to make a consequential fact more or less probable.'" *Graber v. City of Ankeny*, 616 N.W.2d 633, 638 (Iowa 2000) (citing *McClure v. Walgreen Co.*, 613 N.W.2d 225, 235 (Iowa 2000)). "Unfair prejudice arises when the evidence prompts the jury to make a decision on an improper basis." *Id.* (quoting *Waits v. United Fire & Cas. Co.*, 572 N.W.2d 565, 569 (Iowa 1997)).

Van Hemert argues the issue of whether Donaldson ditched marijuana is relevant because the evidence makes it more likely someone in Donaldson's vehicle ditched another object or weapon at or on the way to the Jiffy Mart.[4] He

---

[4] The issue of whether Donaldson, Todd, or Allen had anything in their hands when they approached the Van Hemert property was subject to conflicting evidence and testimony. Van Hemert and Stanley initially told police and testified at trial that they saw a pole-like object in the hands of one of the three men in Donaldson's

also asserts that the probative value of this evidence as to Donaldson's character for truthfulness is not substantially outweighed by unfair prejudice because of changing societal attitudes towards marijuana. The trial judge rejected the same argument and found that "the issue of marijuana is totally extraneous to the issues in this case" and that introduction of the evidence would be "more prejudicial than probative."

We agree. The issue of whether Donaldson ditched marijuana at the Jiffy Mart is collateral and not relevant to the consequential facts of the case. In the context of this case, the introduction of evidence that the witness possessed marijuana may lead to unfair prejudice in the minds of the jury. It was not an abuse of discretion for the trial judge to determine the probative value of such evidence as to Donaldson's character for truthfulness was outweighed by its risk of unfair prejudice.

## III.    Conclusion

We find no error in the trial court's denial of Van Hemert's request for a pretrial immunity hearing and Van Hemert's argument for a post-trial immunity hearing is not preserved. Substantial evidence supports the jury's findings that Van Hemert acted without justification and with malice aforethought. The trial court did not abuse its discretion in denying Van Hemert's motions for new trial and in arrest of judgment. The trial court did not abuse its discretion in excluding certain impeachment evidence. We are unable to hear his ineffective-assistance-of-

---

car. However, Marcus testified that he did not see the men carrying any objects. No weapons or objects matching Van Hemert and Stanley's description were found on Donaldson, Todd, or Allen when they encountered police at the Jiffy Mart.

counsel claim on direct appeal, and Van Hemert may raise those in a future postconviction proceeding if he elects to pursue the same.  Accordingly, we affirm the conviction.

**AFFIRMED.**