# IN THE COURT OF APPEALS OF IOWA

No. 19-0912
Filed July 22, 2020

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**DAVID E. WILLIAMS,**
        Defendant-Appellant.

_____

Appeal from the Iowa District Court for Chickasaw County, Richard D. Stochl, Judge.

David Williams appeals his convictions of first-degree sexual abuse, third-degree sexual abuse, and incest. **AFFIRMED.**

Martha J. Lucey, State Appellate Defender, and Ashley Stewart, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Israel Kodiaga, Assistant Attorney General, for appellee.

Considered by Doyle, P.J., May, J., and Scott, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2020).

**SCOTT, Senior Judge.**

David Williams appeals his convictions of first-degree sexual abuse, third-degree sexual abuse, and incest. As to all three convictions, Williams argues the district court allowed the State to elicit impermissible vouching testimony from two professionals who interviewed the alleged victim. He also challenges the sufficiency of the evidence supporting the serious injury element of his conviction of first-degree sexual abuse. Finally, Williams argues the court erred in failing to merge his dual convictions of sexual abuse.

## I.    Background Facts and Proceedings

R.W. is Williams's family member. She grew up in Oklahoma. R.W. moved to Iowa with her mother in March 2015, when she was twelve. They moved in with Williams. Also residing in the home were Williams's wife and son. At trial, R.W. testified to numerous instances of sexual abuse at the hands of Williams between March 2015 and July 2016, during which she was twelve and thirteen years old, including groping; manual penetration of her vagina; oral, vaginal, and anal sex. On one occasion of abuse in Williams's bedroom, R.W. tried to escape from the situation. Williams responded by putting a lit cigarette against R.W.'s face. The cigarette left a mark, which developed into a scar. According to R.W.'s trial testimony, the scar was faint, but she could still see it when she looked at herself in the mirror.

R.W. and her mother continued to reside with Williams until late December 2015, when they moved into an apartment. R.W. continued to variously see Williams on the weekends and during the summer. Toward the end of the summer, R.W. began advising Williams she was going to tell someone about his conduct.

Williams would become angry and slap R.W. or grab her by the throat. Ultimately, the abuse ended in or around July 2016. As noted, all of the abuse occurred while R.W. was twelve and thirteen years old.

In March 2017, R.W. was sent to a juvenile detention center. While residing at the juvenile detention center, Williams, his wife, and his son visited R.W., but R.W. declined to see them. A few days later, on April 24, a clinical psychologist at the detention center, Dr. Christine Guevara, conducted a structured interview of R.W., during which R.W. disclosed allegations of sexual abuse at the hands of Williams. R.W. testified she did not report the abuse earlier because Williams advised her to not tell anyone and it was their secret and she felt threatened by Williams, noting there were times he would slap her when she screamed, and, on the one occasion, he burned her face with a cigarette. The allegations were relayed to the Iowa Department of Human Services (DHS). DHS alerted law enforcement, and an investigation ensued. On April 28, R.W. also underwent a forensic interview at a child protection center, which was conducted by Miranda Kracke.

Williams was charged by trial information with first-degree sexual abuse, third-degree sexual abuse, and incest. The matter proceeded to a jury trial. Following the State's case-in-chief, Williams moved for judgement of acquittal. As to the charge of first-degree sexual abuse, Williams argued, among other things, the State failed to establish the serious injury element. The court denied the motion, reasoning the evidence was sufficient to engender a question for the jury. The jury found Williams guilty as charged. The court denied Williams's post-trial

motion for a new trial and in arrest of judgment. Williams appealed following the imposition of sentence.

## II.    Analysis

### A.    Vouching

Williams claims the court erred in allowing expert testimony that improperly vouched for the credibility of R.W.'s allegations. Specifically, he complains of Dr. Guevara's testimony concerning delayed disclosures of sexual abuse and emotional responses to abuse and Kracke's testimony concerning grooming, delayed disclosure, and varying accounts of the allegations. Our review is for discretionary abuse. *See State v. Juste*, 939 N.W.2d 664, 672 (Iowa Ct. App. 2019). This is our most deferential standard of review. *State v. Roby*, 897 N.W.2d 127, 137 (Iowa 2017). "When the district court exercises its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable, an abuse of discretion occurs." *Juste*, 939 N.W.2d at 672 (quoting *State v. Dudley*, 856 N.W.2d 668, 675 (Iowa 2014)).

At trial, defense counsel had lodged a preliminary objection to any testimony on the issue of delayed disclosure as improper vouching testimony.[1] The court noted it would deal with the vouching objection as it arose but advised it would allow testimony on delayed disclosure so long as it did not specifically bolster R.W.'s credibility.

At trial, Dr. Guevara was questioned about delayed disclosure of allegations of sexual abuse. Counsel renewed her objection during Dr. Guevara's testimony.

---

[1] The defense had also raised this issue in a pretrial motion in limine.

The court overruled the objection. Dr. Guevara went on to testify regarding delayed disclosure as to children in general. She stated children commonly delay disclosure because they do not always feel safe in their environment, and disclosure in a juvenile detention center is common because children feel safe in such an environment. She also testified it is common for frequent abuse to become normalized for children. She additionally stated some children do not report abuse because of Stockholm syndrome—attachment to their abuser.

The State also called Kracke as a witness and questioned her about delayed disclosure of sexual abuse. Defense counsel's objection to testimony on the issue was again overruled. Kracke went on to explain children do not report sexual abuse because they are either told they would not be believed or they themselves simply think they will not be believed, they have been threatened, or they believe "someone they loved would be hurt" or get in trouble. Kracke was also questioned about the commonality of children providing varying allegations to different people. Defense counsel's objection to the question was overruled, and Kracke testified that would depend on a number of dynamics. She also explained when the abuse is ongoing, it is hard for children to identify specific incidents of abuse because they all mesh together.

Williams largely complains the State crafted its examination of these witnesses to explain the circumstances of R.W.'s report of sexual abuse and her inconsistent accounts of the allegations. But both witnesses only testified to children in general; neither referred to R.W. specifically, and neither stated R.W.'s conduct was consistent with that of other victims of sexual abuse. *See State v. Leedom*, 938 N.W.2d 177, 192 (Iowa 2020) (noting, "Experts may express general

opinions but may not directly comment on the veracity of the child victim" and finding testimony that "was general in nature describing why children delay disclosure, the grooming process, why children have an inability to recall specific dates" permissible); *Dudley*, 856 N.W.2d at 676 (noting general testimony about tendencies of victims of sexual abuse is allowed when "the expert witness avoided commenting directly on the child at issue"). Thus, we find no abuse of discretion or resulting cause for reversal. *See, e.g.*, *State v. Lindaman*, No. 18-1147, 2020 WL 821974, at *6 (Iowa Ct. App. Feb. 19, 2020).

B.      Sufficiency of the Evidence

Next, Williams challenges the sufficiency of the evidence supporting the serious injury element of his conviction of first-degree sexual abuse. Challenges to the sufficiency of the evidence are reviewed for corrections of errors at law. *State v. Mathias*, 936 N.W.2d 222, 226 (Iowa 2019). The court views "the evidence 'in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence.'" *State v. Ortiz*, 905 N.W.2d 174, 180 (Iowa 2017) (quoting *State v. Huser*, 894 N.W.2d 472, 490 (Iowa 2017)). All evidence is considered, not just that of an inculpatory nature. *See Huser*, 894 N.W.2d at 490. "[W]e will uphold a verdict if substantial evidence supports it." *State v. Wickes*, 910 N.W.2d 554, 563 (Iowa 2018) (quoting *State v. Ramirez*, 895 N.W.2d 884, 890 (Iowa 2017)). "Evidence is substantial if, 'when viewed in the light most favorable to the State, it can convince a rational jury that the defendant is guilty beyond a reasonable doubt.'" *Id.* (quoting *Ramirez*, 895 N.W.2d at 890). Evidence is not rendered insubstantial merely because it might support a different conclusion; the only question is whether the evidence supports the finding actually made. *See*

*Brokaw v. Winfield-Mt. Union Cmty. Sch. Dist.*, 788 N.W.2d 386, 393 (Iowa 2010). In considering a sufficiency-of-the-evidence challenge, "[i]t is not the province of the court . . . to resolve conflicts in the evidence, to pass upon the credibility of witnesses, to determine the plausibility of explanations, or to weigh the evidence; such matters are for the jury." *State v. Musser*, 721 N.W.2d 758, 761 (Iowa 2006) (quoting *State v. Williams*, 695 N.W.2d 23, 28 (Iowa 2005)).

The State bears the burden of proving every element of a charged offense. *State v. Armstrong*, 787 N.W.2d 472, 475 (Iowa Ct. App. 2010). Williams does not challenge the jury instructions employed at trial. As such, the instructions serve as the law of the case for purposes of reviewing the sufficiency of the evidence. *See State v. Banes*, 910 N.W.2d 634, 639 (Iowa Ct. App. 2018). On the charge of first-degree sexual abuse, the jury was instructed the State must prove, among other things: "In the course of committing the sexual abuse, David Williams caused a serious injury to R.W." *See* Iowa Code § 709.2(1) (2015). "Serious injury" was defined as "a bodily injury which causes serious permanent disfigurement." *See id.* § 702.18(1)(b)(2). The jury instructions defined "bodily injury" as "physical pain, illness or any impairment of physical condition." *Accord State v. McKee*, 312 N.W.2d 907, 913 (Iowa 1981) (adopting Model Penal Code definition of bodily injury).

Williams claims the evidence was insufficient to show the cigarette burn to R.W.'s face amounted to a serious permanent disfigurement. He complains no photographs of the scar were admitted as evidence and R.W. simply pointed to where it was but the record indicates it could not be seen by the jury. However, while R.W. testified the scar was faint, she noted she could still see it when she

looked at herself in the mirror. Furthermore, when R.W. underwent a second forensic interview in 2019, years after the incident and shortly before trial, the interviewing nurse viewed the area where R.W. reported being burnt. She testified, "It looked like a scar." Although she acknowledged it could have been caused by a host of things, the nurse's testimony that "[i]t looked like a scar," coupled with R.W.'s testimony as to how she got it and it was still visible when she looked in the mirror, and when viewed in the light most favorable to the State, was substantial evidence that R.W. was still scarred from the cigarette burn. And Williams makes no claim the scar, if its existence was proven by substantial evidence, could not amount to a serious permanent disfigurement. Even if he did, while scarring does not amount to a per se serious permanent disfigurement, whether it does in any given case is for the jury to decide. *State v. Hanes*, 790 N.W.2d 545, 554 (Iowa 2010).

Viewing the evidence in the light most favorable to the State, as we must, we conclude the evidence was sufficient to establish the challenged element of first-degree sexual abuse beyond a reasonable doubt.

C. Merger

Finally, Williams claims the district court erred in failing to merge his sexual-abuse convictions. Because Williams was sentenced on both convictions, he characterizes his claim as a challenge to an illegal sentence, which can be raised at any time. *Goodwin v. Iowa Dist. Ct.*, 936 N.W.2d 634, 643 (Iowa 2019). The State claims Williams mischaracterizes his challenge as one to an illegal sentence and is really a challenge to the sufficiency of evidence to support both charges as separate events and thus error is not preserved. We disagree. Williams, at least

partially, bases his argument on lesser-included-offense principles and how the jury was instructed. *See State v. Stewart*, 858 N.W.2d 17, 22 (Iowa 2015) (noting focus of merger analysis "is on the crimes charged in the trial information and for which the jury was instructed"); *State v. Ross*, 845 N.W.2d 692, 701 (Iowa 2014) (noting the merger doctrine involves "double jeopardy claims involving lesser-included offenses"). We proceed to the merits.

Iowa Code section 701.9 provides:

No person shall be convicted of a public offense which is necessarily included in another public offense of which the person is convicted. If the jury returns a verdict of guilty of more than one offense and such verdict conflicts with this section, the court shall enter judgment of guilty of the greater of the offenses only.

Simply stated, under the merger doctrine, "if the lesser offense contains an element that is not part of the greater offense, the lesser cannot be included in the greater," and merger is not required. *State v. Anderson*, 565 N.W.2d 340, 343 (Iowa 1997). The determination logically begins "with the court's marshaling instruction on the greater offense." *Id.* (quoting *State v. Turecek*, 456 N.W.2d 219, 223 (Iowa 1990)). We apply the legal elements test, which, importantly, is "purely a review of the legal elements and does not consider the facts of a particular case." *Krogmann v. State*, 914 N.W.2d 293, 325 (Iowa 2018) (quoting *State v. Love*, 858 N.W.2d 721, 725 (Iowa 2015)).

[U]nder the legal test the lesser offense is necessarily included in the greater offense if it is impossible to commit the greater offense without also committing the lesser offense. If the lesser offense contains an element not required for the greater offense, the lesser cannot be included in the greater.

*Id.* (alternation in original) (quoting *State v. Braggs*, 784 N.W.2d 31, 35–36 (Iowa 2010)).

So, the question before us is whether it was impossible for Williams to commit first-degree sexual abuse, as instructed, without also committing third-degree sexual abuse, as instructed. As noted, this is a legal test, and the facts of the case have no bearing on the determination. As to the charge of sexual abuse in the first degree, the jury was instructed the State was required to prove the following elements:

> 1. Between March of 2015 and September of 2016, David Williams performed a sex act with R.W.
> 2. The defendant performed the sex act while R.W. was under the age of 14 years.
> 3. In the course of committing the sexual abuse, David Williams caused serious injury to R.W.

As to third-degree sexual abuse, the jury was instructed the State was required to prove the following elements:

> 1. Between March of 2015 and September of 2016, David Williams committed a sex act on R.W.
> 2. The sex act occurred while R.W. was 12 or 13 years of age.
> 3. The act was between persons who were not at the time cohabiting as husband and wife.

Element one of each charge is virtually identical. It would be impossible for Williams to commit element one of count one without also committing it as to count two. Element two of count two is likewise subsumed into element two of count one, as a twelve- or thirteen-year old is under the age of fourteen years. Element three of count two requires that the sex act be between persons not cohabiting as husband and wife. Count one does not require the establishment of that element. As a result, it would not be impossible for Williams to commit first-degree sexual abuse without also committing third-degree sexual abuse. Had Williams and R.W. been cohabiting as husband and wife, he could have been convicted under count

one but not count three.  As such, merger is not required.  *See id.*  While Williams urges the jury was required to find that two separate sex acts occurred, which it did not, such is irrelevant to the legal question of whether count two is a lesser-included offense of count one.  *See Bryson v. State*, 886 N.W.2d 860, 864–65 (Iowa Ct. App. 2016) ("[D]espite our agreement with Bryson's assertion that merger would be proper because the jury was not asked to find two, nonsexual assaults, his merger claim fails because robbery, the lesser offense, contains an element not required for burglary, the greater offense.").

## III.    Conclusion

We find no abuse of discretion on Williams's claim the court allowed impermissible vouching testimony.  We find the evidence sufficient to support the serious injury element of first-degree sexual abuse.  We conclude merger of the sexual-abuse convictions is not required.  We affirm.

**AFFIRMED.**